SCOTT ROSE, JUNIOR, & others *vs.* EDWARD REGAN
& another.

Suffolk.   December 4, 1961. — April 23, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& SPIEGEL, JJ.

*Insurance,* Motor vehicle liability insurance, Waiver. *Estoppel.  Waiver.*
*Agency,* Scope of authority or employment.

Although there was a material breach of a motor vehicle liability insur-
   ance policy by the insured in failing to forward to the insurer certain
   notices in connection with an action at law against him, where the in-
   surer, with knowledge of such breach and without endeavoring to get
   in touch with the insured, from whom it would have learned that he had
   never been served with process in the action, "took control of" the action
   by entering a general appearance therein for the insured, having a de-
   fault against him removed, and filing an answer, and thereby rendered
   any falsity in the sheriff's return on the writ immaterial and deprived
   the insured of his cause of action against the sheriff for any such falsity,
   a disclaimer of liability under the policy thereafter attempted by the
   insurer for the insured's breach of the policy was precluded.   [226–229]
Action taken in court by the insurer in a motor vehicle liability insurance
   policy in behalf of the insured in a proceeding against him might prop-
   erly be inferred to have been taken by one authorized by the insurer.
   [229]

BILL IN EQUITY, filed in the Superior Court on April 6,
1959.

The suit was heard by *Coddaire, J.*

*Philander S. Ratzkoff,* for the defendant American Em-
ployers' Insurance Company.

*Harold B. Dondis,* (*Arthur F. Flaherty* with him,) for the
plaintiffs.

WHITTEMORE, J.   The plaintiffs, Scott Rose, Junior, Nora
P. Rohan, and Beatrice Stuart, having each recovered
a judgment against the defendant Regan (the insured),
brought this bill in equity to reach and apply the obligation
of the defendant American Employer's Insurance Company
(the insurer) under the noncompulsory guest coverage of a

motor vehicle liability policy.  G. L. c. 175, §§ 112, 113; c. 214, § 3 (10).  The insurer appeals from the final decree which held it liable for each judgment.  There is a statutory report of the material facts and a report of all the evidence.  The policy contained "notice" and "coöperation" clauses and a provision that "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy . . . ."  The notice clause included this sentence: "If claim is made or suit is brought against the insured, he shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

These facts are shown: Regan duly notified the insurer of the accident which occurred on May 24, 1957.  He then lived at 181 Monticello Avenue, Dorchester, with his mother.  He was a truck driver and seldom at home.  The family moved to Oakwood Street, Dorchester, between June 11 and June 14, 1957.  Regan did not notify the insurer of his change of address.  Writs in the Rose and Rohan cases were served on June 25, 1957, by leaving the summons at 181 Monticello Avenue.  Regan did not know of that service.  On or about July 8, 1957, he received notice by card from the court of his default in those cases.  The writ in the Stuart action was served at the Oakwood Street address on July 17, 1957, by leaving the summons but Regan did not receive the summons.  The three actions were removed to the Superior Court, the Rose and Rohan cases on July 23, 1957, and the Stuart case on August 7, 1957.  Regan received, but did not forward, a letter (or letters)[1] dated August 27, 1957, from Thomas E. Leen, Esquire, the attorney for Rose and Rohan, with notice of motions to default for failure to appear and answer, to be heard on September 10, 1957, and suggesting that he see his insurer.

The insurer learned of the defaults in the Rose and

---

[1] Although the finding is in the singular there are among the exhibits carbons of two letters, substantially alike except for the captions, addressed to 11 Oakwood Street, with note of copies also sent to another address.

Rohan cases by a telephone call from Mr. Leen, and on September 12, 1957, filed appearances and answers, had the defaults removed and, as the judge found, "took control of the proceedings . . . without exerting itself to make contact with Regan, and had it done so, it would have learned that Regan had not been served."

The insurer's investigator had in June, 1957, called three times at 181 Monticello Avenue: on June 3 he found no one there; on June 11 Regan's mother said she would have him call the investigator the next day; on June 14 the investigator found that the family had moved and he could not find the new address. The insurer's next effort to find Regan was in September, 1957. On September 27 the insurer learned of Regan's Oakwood Street address. Regan called on the insurer on October 2, 1957, and gave a signed statement which told that, about July 8, 1957, he had received two cards stating "Rose vs. Regan" and "Rohan vs. Regan" which he did not send to the insurer "as I did not know I was supposed to"; that he was summoned and found guilty about July 16, 1957, of driving so as to endanger, and fined $50, and he did not notify the insurer of that summons; that he had received no "suit papers" but did receive the motion to default on August 27, 1957, and did not notify the insurer "as I figured they already knew about it, as I had [promptly] reported the accident."

On October 16, 1957, the insurer disclaimed liability in a letter to Regan which stated: "RE: MX 67984 Z Rose Scott vs. Ed. J. Regan   We have received knowledge of the pending suits against you which were in default from the plaintiff's attorney, Thomas Leen. Our counsel has filed an answer and appearance on your behalf, in addition to removing the default. . . . Because of your failure to forward the suit summons you have not complied with the terms of your policy. We wish to advise you that we will investigate this case and handle the present suit without prejudice to our rights under the policy. . . . [The insurer] will not pay any judgment rendered against you in the above entitled case and further expressly reserves all

its right to withdraw from the defense of this action at any time. We will assume that you are in agreement with the above arrangement unless we hear from you to the contrary.''

Regan testified: ''I think I received a letter saying that the insurance company wasn't going to stand behind me.'' Later, when asked as to its contents, he answered that the letter had said that ''the insurance company was not going to stand behind me in this action.''

The judge found ''no failure on the part of Regan to forward . . . every demand, notice, summons or other process, nor any failure on Regan's part to co-operate with the insurer on the Stuart case''; that the letter of October 16 referred only to the Rose case; and that ''no such reservation letter was sent on the Stuart case.'' The judge ruled that the insurer was estopped from disclaiming liability in the Rose and Rohan cases.

1. The judge's finding that there was no breach of the coöperation and notice clauses in the Stuart case was a reasonable conclusion. Regan received no process or notice and knew of no reason to call the insurer in respect of that action. In the circumstances Regan's failure to notify the insurer of his change of address was not material. *Imperiali* v. *Pica,* 338 Mass. 494, 501. We do not reach the issue whether the letter of October 16, 1957, can reasonably be construed to refer to the Stuart case.

2. There was a material breach of the notice clause in respect of the Rose and Rohan cases and it is not relevant whether the insurer was prejudiced. *Polito* v. *Galluzzo,* 337 Mass. 360, 365. *Imperiali* v. *Pica,* 338 Mass. 494, 498.

The insurer's general appearance on September 12, 1957, made a significant and irrevocable change in Regan's position. We assume the sheriff's return gave the court jurisdiction. *Union Sav. Bank* v. *Cameron,* 319 Mass. 235, 236, and cases cited. If the return was false Regan would have had an action against the sheriff to the extent of his damage. *Ibid.* But the general appearance gave a basis of jurisdiction other than the return and rendered the return

inconsequential. Thus Regan's only possible right over, other than against the insurer, was taken away. If this was in violation of the contract or negligent, Regan could recover against the insurer, *Abrams* v. *Factory Mut. Liab. Ins. Co.* 298 Mass. 141, 143, *Salonen* v. *Paanenen,* 320 Mass. 568, 574, but that right does not extinguish the significance of the insurer's act in respect of policy liability.

The insurer had sufficient knowledge in respect of Regan's breach of condition to justify a disclaimer or reservation of rights on that day. The aspect of the case on September 12, particularly after the insurer's talk with the attorney for Rose and Rohan, was notice to it of breach of the coöperation and notice clauses, or the extreme likelihood thereof. The insurer knew that in due course, under the rules of court, notices must have been sent to Regan which he had not sent to it. The insurer, nevertheless, exercised dominion over the case at an important point without disclaiming liability or reserving rights. Protection of its position and Regan's did not make imperative a general appearance without an attempt to reach Regan. Mr. Leen, in writing Regan on August 27, 1957, had said, ''I cannot understand why your insurer has not appeared for you in this action, and suggest that you contact your company again. We will be most agreeable to assenting to the filing of a late answer if they desire.'' It is a reasonable inference that through Mr. Leen, or application to a judge and without an appearance for Regan, the insurer could have had time to ascertain Regan's last known address, and to seek him out and learn all material circumstances. If, after having tried and failed, it had as a last resort sent Regan a reservation of rights and entered a general appearance the case would have been in different aspect.

In *Phillips* v. *Stone,* 297 Mass. 341, 343, 344–345, the insurer, on receipt from the insured of notice of the accident, given too late to be valid under the policy, said it would investigate the case and then ''pass upon it'' and in the meantime ''preserve whatever rights you have.'' When the action was begun the insurer appeared for the insured, and

filed answers for him to interrogatories. After full investigation it disclaimed liability and withdrew. This court held that the insurer had not waived its right to disclaim nor was it estopped. The opinion said, "What the defendant insurance company did . . . was entirely reasonable, and harmless to the defendant . . . . For all that appears . . . [investigation would have shown that the accident happened] a few feet away from the place of its actual occurrence . . . [and on a public way so that the insurer] could hardly have escaped liability . . . . The practical course was to investigate the facts and law governing the insurer's liability, and in the meantime to protect the defendant . . . from a default in the action. . . . No waiver could be ruled to result as matter of law. Neither was there any estoppel. The defendant . . . was benefited, rather than harmed, by what was done."

The case at bar is distinguishable not only because of the absence of a threshold reservation, as at least implied in the *Phillips* case, but also because of the irrevocable change in Regan's rights which resulted from the insurer's action. It is similar to the case in which the insurer seeks to disclaim after having defended without reservation or disclaimer. Liability in such a case, it has been said, "may be rested either on waiver or on estoppel, in appropriate instances." *Ibid.* 344. The basis in estoppel is that, "having led the assured to rely exclusively on its protection during the period when he might have protected himself, an insurer cannot, in fairness, thereafter withdraw that protection." *Salonen* v. *Paananen,* 320 Mass. 568, 572. Although there is no estoppel in the present case, it is equally unfair for an insurer to withdraw protection after its participation in the action has irrevocably and materially affected the insured's position in respect thereto without his knowledge or consent.

There is at least as much harm or possibility of harm in this case as in the case of full defence without disclaimer. It is purely speculative whether in the latter type of case the insured would benefit from a defence on the merits by

his own counsel at his own expense rather than by the insurer at its expense. In the present case it is very likely that the insured, upon notice prior to removal of default, would have authorized the general appearance in his behalf notwithstanding a disclaimer by the insurance company. But the controlling circumstance is the exercise of dominion over the case, to determine irrevocably its future course, and not the likelihood of damage.

Waiver is the intentional relinquishment of a known right. *Doujotos* v. *Leventhal,* 271 Mass. 280, 282. *Sheehan* v. *Commercial Travelers Mut. Acc. Assn.* 283 Mass. 543, 552. *Potter* v. *Great Am. Indem. Co.* 316 Mass. 155, 158. The plaintiffs have the burden of proof on the issue of waiver (*Sheehan* v. *Commercial Travelers Mut. Acc. Assn.* 283 Mass. 543, 549–550) and also must show that those who acted for the insurer had the power to bind it in a way contrary to that contemplated by the policy. *Potter* v. *Great Am. Indem. Co.* 316 Mass. 155, 158.

The intent of the insurer on September 12, 1957, was to remove the default and, as in *Phillips* v. *Stone,* 297 Mass. 341, to protect Regan, but it must be held to the further intent to have such effect on Regan's rights as such action would necessarily have in all the circumstances. It is unimportant if the insurer did not know that Regan had not been served or that it may have assumed that the case was like that in *Phillips* v. *Stone, supra.* The insurer is barred from subsequent disclaimer by the inequity of the result even though there was no conscious intent to waive rights. The insurer's action having been taken in court, sufficient authority in the premises is reasonably inferred.

The letter of October 16 is, in the circumstances, inconsequential. We need not determine if in other circumstances such a disclaimer on an invalid ground would have operated as a sufficient notice of reservation of rights to permit the insurer later to disclaim on valid grounds.

The decree is affirmed with costs of the appeal to the plaintiffs against the insurer.

*So ordered.*