Geoffrey G. **WHITNEY**, Jr., et al., Plaintiffs,

v.

**CONTINENTAL INSURANCE COMPANY et al.,** Defendants.

**Civ. A. No. 81–1166–G.**

United States District Court, D. Massachusetts.

Oct. 15, 1984.

---

Thayer Fremont-Smith, Harold H. Leach, Jr., Choate, Hall & Stewart, Boston, Mass., for plaintiffs.

Richard Eurich, Morrison, Mahoney & Miller, Boston, Mass., for defendants.

## MEMORANDUM AND ORDERS ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

GARRITY, District Judge.

Plaintiffs, two insureds, have brought this action against defendant insurance company and its adjustor seeking to establish that defendants are obligated to provide coverage under plaintiffs' homeowner's and automobile insurance policies in a tort action brought against plaintiffs. Jurisdiction is proper under 28 U.S.C. §§ 1332 and 2201. Plaintiffs have moved for partial summary judgment on the issues of coverage under the two policies, the amount of coverage under the automobile policy, unfair insurance practices under M.G.L. c. 176D and c. 93A, and defendants' contractual obligation to pay plaintiffs' attorneys fees related to their defense of the underlying tort action. Defendants have brought a cross-motion for summary judgment on the issues of coverage under the homeowner's and automobile policies. The court received briefs and heard oral argument.

## I. *Statement of Facts*

In 1978, defendant Continental Insurance Company ("Continental") issued automobile and homeowner's insurance policies to plaintiffs, a husband and wife. The automobile policy provided coverage for bodily injury to others of $200,000 per person and $500,000 per accident. The homeowner's policy provided for personal liability coverage up to $100,000.

On December 8, 1978, plaintiffs' daughter, while driving in her own automobile, was involved in an accident. The accident killed the driver of the other vehicle, who left a wife and two children. On July 28, 1979, plaintiffs received a summons for an action in Barnstable County Superior Court, *Lang v. Whitney*, Civil Action No. 39250, brought by the estate and family of the victim of the accident. The complaint in the *Lang* action alleged that plaintiffs "negligently and recklessly provided and allowed the defendant Jamie C. Rogers to use the dangerous instrumentality (to wit, an automobile) which caused the fatal injuries and further failed to take corrective measures to withhold liquor from their child or to restrain their child from driving while drinking or when under the influence of intoxicants, when the defendant parents knew or should have known of their child's dangerous propensity for such conduct and the resulting threat of injury to other drivers."

On August 7, 1979, plaintiffs sent Continental a copy of the *Lang* summons and complaint and requested coverage under their insurance policies. Continental referred the claim to defendant Underwriters Adjusting Company ("Underwriters"). Eight months later, on April 9, 1980, plaintiffs' attorney sent Continental a Chapter 93A "demand letter" insisting that it notify plaintiffs whether Continental would provide coverage in the *Lang* action. In a letter of April 10, 1980, plaintiffs' attorney informed Continental that the Lang's attorney had proposed settlement for one-third of their original demand of $1,500,000, and

demanded that defendants provide a defense and settle the *Lang* case within the limits of the policies.

On May 9, 1980, plaintiffs' attorney was informed by telephone that Continental would afford coverage under the automobile policy up to a limit of $200,000. Both plaintiffs and plaintiffs' attorney received letters on May 19, 1980 confirming that Continental would provide coverage under the automobile policy, but denying coverage under the homeowner's policy. Neither letter contained any "reservation of rights" by Continental. Plaintiffs were informed that Attorney Thomas Burns had been retained by Continental to provide plaintiffs with a defense in the *Lang* action. The letter to plaintiffs also recommended that plaintiffs continue to retain their personal lawyer in the *Lang* action, since they were potentially liable for damages in excess of the $200,000 policy limits.

In a letter to Burns dated May 23, 1980, plaintiffs' attorney accepted the defense provided by Continental under the automobile policy, but disagreed with Continental's determination as to the homeowner's policy. Plaintiffs' attorney also expressed his intention to continue representing plaintiffs in the *Lang* action. On June 2, 1980, Burns filed an appearance in the *Lang* action. Plaintiffs' personal attorney has not withdrawn his appearance in that action.

On August 1, 1980, Burns informed plaintiffs' attorney that Continental would pay his fees in defending plaintiffs in the *Lang* action up until the time the insurance company assumed the defense. Plaintiffs' attorney sent Burns an itemization of his work, but was never paid.

During the months of November 1980 through January 1981, Burns requested settlement authorization from Continental. Continental and Underwriter's employees also recommended to their superiors that Burns be given settlement authority.

On October 23, 1980, plaintiffs wrote to Burns demanding that Continental provide the maximum coverage of $500,000 under the automobile insurance policy since, according to plaintiffs, four persons claimed injury in the *Lang* action. They also demanded coverage under the homeowner's policy and requested that Continental attempt to settle the *Lang* action within the aggregate policy limits of $600,000. On February 10, 1981, plaintiffs sent Continental and Burns another Chapter 93A "demand letter" making similar demands.[1]

On May 5, 1981, plaintiffs received a letter from defendants disclaiming coverage under both the automobile and homeowner's insurance policies. Continental stated that the automobile policy did not cover the accident since the car involved in the accident was owned by plaintiffs' daughter and was not insured under plaintiffs' policy. The insurance company offered to continue to represent plaintiffs in the *Lang* action under a reservation of rights.

On May 6, 1981, plaintiffs filed the instant action. Plaintiffs also entered into an agreement with the Langs during May of 1981. Under this agreement, plaintiffs have paid the Langs $150,000 outright, and placed an additional $175,000 in trust in consideration for the Langs' promise not to seek payment from plaintiffs' personal assets upon a judgment against plaintiffs in the *Lang* action. According to the trust agreement, income from the trust is to be paid to plaintiffs until there is a determination by this court that defendants must provide coverage under any of the policies in question. At that time, the interest will be accumulated by the trustee. If and upon a final judicial determination that plaintiffs' insurance policies do not cover the *Lang* action, the trust principal and any accumulated interest will be paid to the Langs. If it is determined that the insurance policies do cover plaintiffs, the trust res will still be paid to the Langs at a

---

1. Continental claims that it did not receive this letter until April 30, 1981, when it was forwarded from Burns. However, plaintiffs' evidence shows that a copy of the letter was sent directly to Continental in February.

future date,[2] but plaintiffs will receive any accumulated interest from the trust as well as a percentage of any payment by Continental to the Langs under the insurance policies in question.[3]

## II. *The Automobile Insurance Policy*

Defendants and plaintiffs agree that, under its actual terms, the automobile insurance policy does not provide coverage for plaintiffs in the *Lang v. Whitney* action. The automobile involved in the December 8, 1978 accident was owned and operated by plaintiffs' daughter. It was not an insured vehicle under the policy issued by Continental, but was insured by an entirely different insurance company. Therefore, defendants were not obligated to provide plaintiffs with a defense in the *Lang* action, nor pay any judgment returned against them under the terms of the automobile insurance policy.

Plaintiffs argue, however, that defendants are barred from disclaiming coverage under the automobile policy because defendants conceded coverage on May 19, 1980 without reserving their rights, undertook control of the defense in the *Lang* action, and failed to disclaim coverage until twenty-one months after learning of the claims against plaintiffs and eleven months after acknowledging coverage and commencing their defense in *Lang v. Whitney.* Plaintiffs rely on the principle stated in *Employer's Liability Assurance Corp. Ltd. v. Vella,* 1975, 366 Mass. 651, 657, 321 N.E.2d 910, that "if the insurer knows of its right to disclaim and exercises dominion over the case at an important point without disclaiming liability or reserving rights, subsequent disclaimer is barred." In *Vella,* the insured misrepresented the true owner of the automobile listed in his policy of insurance. The insurance company was aware of the misrepresentation at the time that the insured notified it of a tort action

against him. However, it defended the insured without any reservation of rights. Eighteen months later, the insurance company disclaimed coverage based on the misrepresentation. The Supreme Judicial Court decided that the insurance company's disclaimer was barred, stating: "In situations like the present one, we think the insurer loses its right to disclaim when it knows the facts, fails to disclaim within a reasonable time, and acts in a way inconsistent with an intent to disclaim." *Id.* at 658, 321 N.E.2d 910.

Defendants attempt to distinguish *Vella* from the instant action by arguing that *Vella* involved an attempt by an insurance company to disclaim on the basis of an *invalid* policy, rather than because there was no coverage under the terms of the policy. However, the language of the Supreme Judicial Court does not indicate that this distinction is at all significant. The purpose of the rule as stated in *Vella* is to protect individuals from prejudicial vacillation by insurance companies which, while having sufficient information to warrant disclaimer, fail to disclaim coverage within a reasonable time, but participate in and, therefore, have an effect on the defense of the insured. The Supreme Judicial Court was not concerned with the reason for the disclaimer, but with the insurance company's unreasonable delay in disclaiming.

■ In the present case, plaintiffs have demonstrated that defendants had completed their investigation of the circumstances surrounding the *Lang* action by March 24, 1980. Other evidence indicates that defendants were aware that the car involved in the accident was owned by plaintiffs' daughter and was not covered under the automobile policy in question well before March of 1980. According to this evidence, which is not countered by any evidence presented by defendants, defendants' dis-

---

**2.** The principal will be distributed to the Langs and the accumulated income to plaintiffs upon the death of plaintiff Geoffrey G. Whitney, Jr. or the attainment by Adam Lang of his twenty-first birthday, whichever comes first.

**3.** According to the agreement between the Langs and plaintiffs, of any insurance policy proceeds paid to the Langs by Continental as a result of the instant action, plaintiffs will receive (a) 20% of the first $100,000, (b) 33% of the second $100,000 and (c) 50% of any additional proceeds.

claimer of liability on May 5, 1981 was at least fourteen months after defendants acquired information sufficient to warrant disclaimer, was twenty-one months after defendants were given notice of the *Lang* action against plaintiffs, and was eleven months after defendants acknowledged coverage and became involved in the defense of the *Lang* case. Therefore, defendants failed to disclaim coverage within a reasonable time after they discovered the necessary information.[4] Furthermore, defendants acted inconsistently with their intent to disclaim by participating in the *Lang* action. Thus, according to *Vella*, the disclaimer should be barred.

The next question is whether plaintiffs must meet all of the requirements of estoppel under the *Vella* rule. While the Supreme Judicial Court does not explicitly discuss the doctrine of estoppel, the rule stated in *Vella* is taken from a line of older Massachusetts cases which are based on the estoppel doctrine. *See Rose v. Regan,* 1961, 344 Mass. 223, 228, 181 N.E.2d 796; *Shapiro v. State Farm Mutual Insurance Co.,* 1968, 355 Mass. 54, 57, 242 N.E.2d 753; *Klefbeck v. Dous,* 1939, 302 Mass. 383, 387, 19 N.E.2d 308. *See also* Appleman, Insurance Law and Practice § 4693 (1979); 38 ALR 2d 1148. Furthermore, the requirement in *Vella* that the insurance company exercise "dominion over the case at an important point" is based on principles of estoppel. As stated in *Rose v. Regan, supra,* it is because the insured relies on the insurance company's protection that the insurance company may not later withdraw that protection. *Id.* 344 Mass. at 228, 181 N.E.2d 796.

■ Therefore, under the doctrine of estoppel, plaintiffs must establish that they were induced by defendants to act differently than they otherwise would have done, that this harmed plaintiffs, and that de-

fendants knew or had reason to know that such harm would result. *Lunt v. Aetna Life Insurance Co.,* 1928, 261 Mass. 469, 473, 159 N.E. 461. In other words, plaintiffs must show that they were prejudiced by defendants' failure to disclaim coverage within a reasonable time. *See* Appleman, Insurance Law and Practice § 4693 (1979); 38 ALR 2d 1148.

■ Defendants argue that, under *Lunt,* plaintiffs have not been prejudiced as a matter of law because they were represented by their personal attorney, who remained on the *Lang* case after defendants took over its defense. We disagree, believing that each case must turn on its particular facts.[5] A genuine issue of material fact remains in this case whether plaintiffs have been prejudiced by defendants' failure to disclaim liability within a reasonable time.

Plaintiffs also claim that defendants are contractually obligated to provide them with coverage under the automobile insurance policy. After plaintiffs sent defendants a 93A demand letter on April 9, 1980, defendants informed them in two letters dated May 19, 1980 that they would provide coverage and a defense under the automobile policy, but not under the homeowner's policy. Defendants' letters, plaintiffs argue, constituted an offer of coverage under the automobile policy. Plaintiffs' subsequent letter of May 23, 1980 is characterized by plaintiffs as an acceptance of defendants' offer of coverage under the automobile policy, but not of defendants' disclaimer of coverage under the homeowner's policy.

■ In our opinion, this correspondence between defendants and plaintiffs did not create any contractual obligations. Defendants' letters of May 19, 1980 contain only their assessments as to their obligations to plaintiffs under the existing poli-

---

4. While reasonableness is normally a question of fact, we find that defendants' delay was unreasonable as a matter of law under the *Vella* decision.

5. The *Lunt* decision is distinguishable: the plaintiff there attempted to estop the defendant

insurance company merely because it had defended plaintiff in the underlying court action; he did not claim that the insurance company unreasonably delayed its disclaimer after acquiring information sufficient to warrant it.

cies. Plaintiffs, in their letter of May 23rd, merely agreed with defendants' conclusion regarding coverage under the automobile policy, and disagreed with defendants' assessment with respect to the homeowner's policy. This exchange, in our view, did not form a contract.

■ Defendants are similarly not contractually obligated to pay plaintiffs' attorneys fees expended in the defense of the *Lang* action prior to defendants' assumption of the defense. Defendants did not make an "offer" to enter into a contract with plaintiffs or their lawyer with respect to the payment of these fees. Rather, defendants, believing that the automobile policy provided coverage in the *Lang* action, were fulfilling their obligations under the policy by providing plaintiffs with a defense. Therefore, defendants will be required to pay these attorneys fees only if there is a final determination that defendants are estopped from disclaiming coverage under the automobile policy.

Finally, plaintiffs claim that defendants are obligated to provide them with the maximum coverage of $500,000 under their automobile insurance policy. The automobile policy provides plaintiffs with coverage for liability up to $200,000 per person with a limit of $500,000 per accident. Plaintiffs contend that the *Lang v. Whitney* complaint alleges four injured persons: the decedent, Dr. Lang; Mrs. Lang, through her loss of consortium; and the two minor children, through their loss of parental society; and that coverage would be for $800,000 ($200,000 × 4) but for the $500,000 ceiling. *Bilodeau v. Lumbermen's Mutual Casualty Company,* 1984, 392 Mass. 537, 467 N.E.2d 137, recently decided that loss of consortium is to be treated as a separate person's "bodily injury" under the standard Massachusetts automobile insurance policy such as the one in question here. Therefore, say plaintiffs, defendants must pro-

vide coverage up to the accident limit of $500,000.

■ In our opinion, the *Bilodeau* rule does not govern the instant case because the coverage claimed by plaintiffs rests not upon the terms of the policy, but on estoppel, and the only assurances by defendants upon which plaintiffs could have relied to their prejudice, *see Sheehan v. The Commercial Travelers Mutual Accident Association of America,* 1933, 283 Mass. 543, 186 N.E. 627, were that defendants would afford coverage up to $200,000. Plaintiffs allege in their complaint that, in a telephone call on May 9, 1980, their attorney was told that defendants would provide coverage up to a limit of $200,000. Defendants' May 19, 1980 letter to plaintiffs explained that since the Langs had claimed damage of $1,750,000, plaintiffs were exposed to personal liability of $1,550,000.[6] Accordingly, defendants' liability under the automobile policy, if ultimately established on estoppel grounds, will be limited to $200,000.[7]

### III. *The Homeowner's Insurance Policy*

The next issue is whether defendants must provide plaintiffs with coverage under the homeowner's policy of insurance. According to coverage E ("Personal Liability") of Section II of the policy, the company "agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury ... to which this insurance applies, caused by an occurrence." Exclusion 1(a)(2), however, states that the policy does not apply "... to bodily injury ... arising out of the ownership, maintenance, operation, use, loading or unloading of ... any motor vehicle owned or operated by, or rented or loaned to any insured ...."

---

**6.** Plaintiffs' briefs on the pending motions refer repeatedly to defendants' acknowledgement of $200,000 coverage under the automobile policy.

**7.** We do not reach defendants' contention that the *Bilodeau* rule is also inapplicable because

*Lang v. Whitney* was brought as a wrongful death action under Mass.G.L. c. 229, § 2 and only one person is entitled to relief under that statute, the estate of Dr. Lang.

Although plaintiffs' *daughter* is an "insured" under the homeowner's policy, it is clear that the policy will not cover her in the *Lang v. Whitney* action since the injuries incurred in the accident arose directly from the daughter's ownership and operation of an automobile. However, plaintiffs and defendants disagree as to whether plaintiffs are covered by this policy.

As stated in *Barnstable County Mutual Fire Insurance Company v. Lally,* 1978, 374 Mass. 602, 373 N.E.2d 966, the court must look to the allegations against the insureds to determine whether the homeowner's policy provides coverage. *Id* at 604, 373 N.E.2d 966. The complaint in *Lang v. Whitney* alleges that plaintiffs negligently entrusted an automobile to their daughter *and* that they failed to restrain their child from driving while intoxicated. The policy exclusion obviously applies to the claim of negligent entrustment under the *Lally* decision.[8] Therefore, this court must only decide whether the allegations in the *Lang* complaint concerning plaintiffs' alleged negligence in failing to prevent their child from driving under the influence of alcohol also fall within the policy exclusion.

■ We conclude that the tort of negligent supervision of a minor child with respect to the minor's driving while intoxicated is sufficiently similar to the tort of negligent entrustment of an automobile to a minor to warrant similar treatment. *See*

*Great Central Insurance Co. v. Roemmich,* S.D.1980, 291 N.W.2d 772. The allegations in the *Lang* complaint concerning plaintiffs' negligent supervision are inextricably tied to the operation and use of a motor vehicle. Therefore, we hold that exclusion 1(a)(2) of plaintiffs' policy is applicable in the instant case and, therefore, plaintiffs are not covered by the homeowner's policy with respect to *Lang v. Whitney.*[9]

## IV. Unfair Insurance Practices

Under M.G.L. c. 93A, § 9, any person who has been injured by another's acts declared to be unlawful under M.G.L. c. 176D, § 3(9), may bring an action for damages and/or equitable relief. M.G.L. c. 176D, § 3(9) lists specific unfair claim settlement practices in the business of insurance. Plaintiffs claim that defendants have violated subsections (b), (e), (f) and (n) of § 3(9).

■ Chapter 176D, § 3(9)(b) provides that it is an unfair claims settlement practice to "[f]ail to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." In this case it is undisputed that defendants did not take any position on coverage for nine months, despite repeated requests by plaintiffs, and then repudiated their determination as to coverage eleven months later.[10] Therefore, we find that defendants did fail to act reasonably promptly under § 3(9)(b).[11]

8. Plaintiffs contend that there is no factual basis for the tort of negligent entrustment of an automobile because the automobile involved in the accident was owned and controlled by plaintiffs' daughter. However, *Lally* requires that the court look to the *allegations* in the underlying tort action, but not their merits. Furthermore, the recreational motor vehicle involved in the *Lally* case was also owned by the insured's minor child, yet the Supreme Judicial Court decided the case on the basis of a negligent entrustment theory.

9. The court also rejects plaintiffs' contention that the "occurrence" sought to be covered under the homeowner's policy was not the accident itself, but was the negligent supervision of plaintiffs' child. The occurrence which caused the injury was obviously the automobile accident.

10. Defendants also failed to respond to plaintiffs' demand letters of April 9, 1980 and February 10, 1981 within thirty days with a written tender of settlement. Defendants claim that they did not receive the February 10, 1981 letter until it was forwarded to them by Attorney Burns on April 30, 1981. However, plaintiffs have produced evidence showing that defendants were also sent a copy of this letter by certified mail/return receipt requested on February 10.

11. This finding moots plaintiffs' claim that defendants also violated § 3(9)(e) in failing "to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed."

■ Plaintiffs also claim that defendants failed "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" in violation of § 3(9)(f), on the basis that the numerous requests from Burns and defendants' employees for settlement authority from defendant Continental demonstrate that liability in the *Lang* action was reasonably clear. However, in a memorandum dated October 16, 1980, defendants' attorneys opined that the Lang's likelihood of recovery against plaintiffs was small, but recommended settlement due to the magnitude of damages involved in that case. Since it is debatable whether liability was reasonably clear to defendants, *see Van Dyke v. St. Paul Fire and Marine Insurance Co.*, 1983, 388 Mass. 671, 448 N.E.2d 357 (expert advice may be relied on by insurance company in determining whether liability is reasonably clear), questions of material fact exist, precluding summary judgment on this issue.[12]

■ Finally, defendants have violated § 3(9)(n) in "failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim ...." Defendants never explained the basis for denying coverage under the homeowner's policy, in contrast with their prompt explanation with respect to the automobile policy once they disclaimed coverage.

■ The parties have not sought to have the question of actual damages determined at this juncture. Furthermore, while the court has determined that defendants have violated M.G.L. c. 176D, § 3(9)(b) and (n), we recognize that material questions of fact remain concerning whether defendants' acts were willful or knowing violations of the statute, entitling plaintiffs to double or treble damages.[13]

### V. Summary

Defendants' motion for summary judgment is granted in part on the ground that, under the terms of the automobile and homeowner's insurance policies, no coverage is directly afforded to plaintiffs for the *Lang v. Whitney* action. However, plaintiffs' motion for summary judgment is also granted in part, and defendants' denied, to the extent that defendants will be barred from disclaiming coverage under the automobile policy if plaintiffs can show at trial that they relied to their detriment on defendants' prior acknowledgment of coverage. Coverage under the automobile policy, if any, will be limited to $200,000. Plaintiffs' motion is denied with respect to their claims that defendants are contractually obligated to provide coverage under the automobile insurance policy and to reimburse plaintiffs for counsel fees incurred by them in defending the *Lang* action prior to defendants' assumption of the defense.

Plaintiffs' motion for partial summary judgment on their claims of unfair insurance practices is granted with respect to §§ 3(9)(b) and (n) of M.G.L. c. 176D, but denied with respect to § 3(9)(f), since a material question of fact remains concerning whether liability was reasonably clear to defendants. The questions of damages and whether defendants' acts were willful or knowing violations of this statute are reserved for trial.

---

**12.** A determination that defendants are not estopped from disclaiming coverage under the automobile policy may moot this issue.

**13.** Under *DiMarzo v. American Mutual Insurance Co.*, 1983, 389 Mass. 85, 101, 449 N.E.2d 1189, damages, if any, will be limited to the amount of plaintiffs' liability to the Langs in excess of their policy coverage, taking into account the settlement agreement between the Langs and plaintiffs.