Louis KERLINSKY, Trustee in Bankruptcy for the Estate of Walker Painting Corporation, Plaintiff,

v.

FIDELITY & DEPOSIT COMPANY OF MARYLAND, Defendant.

Civ. A. No. 85–0353–F.

United States District Court,
D. Massachusetts.

May 5, 1987.

---

Louis Kerlinsky, Springfield, Mass., for plaintiff.

Harvey Weiner, Allen N. David, Peabody & Arnold, Boston, Mass., for defendant.

MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

This is a diversity action brought by a trustee in bankruptcy, alleging that defendant's failures to settle the bankrupt's contract suit and to promptly pay an executed judgment in that suit constitute violations of Mass.Gen. Laws ch. 93A and ch. 176D, and that the defendant's conduct was otherwise tortious.

This matter is presently before the Court upon the plaintiff's objections to the Magistrate's December 16, 1986 Report and Rec-

ommendation Regarding Defendant's Motion for Summary Judgment. The Magistrate recommended that the Court allow defendant's motion for summary judgment as to all five counts of plaintiff's complaint. The Court has made a *de novo* review of those portions of the Magistrate's Report and Recommendation to which plaintiff has objected. 28 U.S.C. § 636(b)(1); Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts.

Plaintiff's objections lack merit. Plaintiff has entirely failed to meet his duty under Fed.R.Civ.P. 56(e). He has submitted nothing to rebut the defendant's affidavits.[1] Nor has plaintiff complied with Rule 18 of the Local Rules of the United States District Court for the District of Massachusetts. For the reasons stated by the Magistrate, under the undisputed facts defendant is entitled to summary judgment on all five counts.

The Court accepts and adopts the Magistrate's Report and Recommendation in its entirety. Defendant's motion for summary judgment is hereby ALLOWED.

It is So Ordered.

## REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

### December 16, 1986

MICHAEL A. PONSOR, United States Magistrate.

### I. INTRODUCTION.

In this diversity action plaintiff, a trustee in bankruptcy, alleges that defendant's failure to settle the bankrupt's contract suit brought in state court and its failure promptly to pay an executed judgment in that case constituted violations of Mass. Gen. Laws ch. 93A and Mass.Gen. Laws ch. 176D. The complaint also includes claims of "outrageous" conduct and "unreasonable bad faith," both purportedly based in tort. Defendant has filed a Motion for Summary Judgment. For the reasons stated below, this court will recommend defendant's motion be allowed in its entirety.

### II. FACTUAL AND PROCEDURAL BACKGROUND.

On April 8, 1970, Walker Painting Corporation ("Walker") entered into a subcontract with Drury Square Contractors, Inc. ("Drury"), a contractor on the Charles NEWtown Apartments project. Exhibit E To Weiner Affidavit. Walker filed a petition in bankruptcy on November 20, 1971 in United States District Court, District of Massachusetts, Civil Action No. 71–1942, Exhibit B to Weiner Affidavit, and on May 1, 1973, a suit was filed by Walker's trustee in bankruptcy against Drury and its guarantor on a payment bond, Fidelity and Deposit Company of Maryland ("F & D"), the defendant here, seeking a balance of $27,450 due on the subcontract. *See, Louis Kerlinsky, Trustee in Bankruptcy of Walker Painting Corporation v. Drury Square Contractors, Inc. and Fidelity and Deposit Company of Maryland,* Superior Court, County of Suffolk, Massachusetts, Civil Action No. 679512, Exhibit C to Weiner Affidavit.

Charles Fuller, Jr., claims attorney for the Boston office of F & D, was informed by its principal Drury that no money was owed to Walker on its claims. Fuller Affidavit at ¶ 3. Drury wanted to defend the case and offered its counsel, Lee H. Kozol, to defend for F & D and itself. F & D tendered its defense to Drury, which was its usual practice, informing Louis Kerlinsky ("Kerlinsky"), trustee for the bankrupt estate, of this decision. *Id.* at ¶¶ 4, 5. Fuller heard nothing further about the suit

---

1. On January 7, 1987 plaintiff moved for leave to file his deposition, representing to the Court that he had mistakenly believed that the deposition had been before the Magistrate. According to plaintiff, the deposition was actually in the possession of the stenographer, who would file it with the Court upon allowance of his motion. The Court allowed plaintiff's motion for leave to file the deposition on January 26, 1987. Plaintiff has yet to file the deposition.

1. This matter has been referred to the court for report and recommendation pursuant to Rule 3 of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, 28 U.S.C. § 636(b)(1)(B).

until December, 1980, over seven years later.

In their answers to the complaint in the state action both Drury and F & D denied any liability. Moreover, Drury asserted that it had been damaged in the amount of $30,000 by Walker's default on the subcontract. Exhibit D to Weiner Affidavit. A jury returned verdicts for the plaintiff trustee on November 21, 1980 and November 24, 1980.[2] Exhibit A to Weiner Affidavit.

In December, 1980, Fuller of F & D was instructed by his home office to inquire about the status of *any* pending cases involving the Charles NEWtown project. Fuller Affidavit at ¶ 5. Fuller contacted First Hartford Realty Corporation, one of the project's indemnitors, and was informed in a letter dated December 29, 1980, that there was no pending litigation and all subcontractors had been paid years before. *Id.* at ¶ 6. F & D then closed its files, and when Fuller left F & D at the end of 1983 he had still heard nothing further about the state court action against Drury and F & D. *Id.* at ¶ 7.

The jury verdict for the trustee, Kerlinsky, was affirmed by the Massachusetts Appeals Court in December, 1984. Further appellate review was denied by the Supreme Judicial Court in February, 1985, and an execution of the judgment, including interest and costs, in the amount of $81,706.58 was issued on May 2, 1985. Exhibit A to Weiner Affidavit and Exhibit A to Kaelin Affidavit.

Kerlinsky wrote to Attorney William K. Danaher on May 15, 1985 and again on May 29, 1985, seeking payment in full of the execution plus accruing interest.[3] Exhibit A to Kaelin Affidavit. On June 11, 1985, having received no response from Danaher, Kerlinsky mailed a demand letter directly to F & D, asserting that failure to make payment on the execution was an unfair act under Mass. Gen. Laws ch. 93A, § 2 and a violation of Mass. Gen. Laws ch. 176D, and stating that suit would be instituted if payment plus interest was not received promptly. *Id.* at ¶ 3 and Exhibit A. That letter was received at F & D on June 14, 1985 by Gerard J. Kaelin, who succeeded Charles Fuller as claims attorney in January, 1984. *Id.* at ¶¶ 1, 3.

Kaelin, who had never heard of the case and could not locate a file on it, began his investigation by leaving a message for Kerlinsky when he could not reach him by telephone the day he received the letter. Kaelin wrote to Kerlinsky on June 17, 1985, three days later, advising that F & D would commence an investigation and consult its principal, Drury. *Id.* at ¶ 4 and Exhibit B. Over the next several weeks Kaelin attempted to reach Danaher by telephone on two occasions and wrote to him twice, but received no response. *Id.* at ¶ 5. Kaelin did not know how Danaher was involved in the case. *Id.*

On June 24, 1985, Kaelin was informed by F & D's home office that they were not familiar with the case but would try to locate the file. *Id.* at ¶ 6. On June 30, 1985, the home office informed Kaelin the file was closed in November, 1981 and it would be retrieved from storage. *Id.* F & D's investigation of court records disclosed that both Drury and F & D were represented in the state contract claim by Lee Kozol, Drury's counsel. *Id.*

When Kaelin spoke with Kozol on July 12, 1985, the latter said he would call Kerlinsky to try and work out some arrangement for payment of the execution. *Id.* at ¶ 7. That same day Kaelin wrote to Kerlinsky, advising that, 1) Kozol would be contacting him; 2) If Kerlinsky had any questions he should feel free to telephone Kaelin and 3) Kaelin would keep Kerlinsky informed of any developments and the re-

---

**2.** The two dates reflect verdicts returned on separate counts of the complaint.

**3.** There is nothing formally in this record to indicate William K. Danaher represented F & D. His name does appear on the docket sheet of the underlying state action under the designation, "Defendant's Counsel," together with Robert D. Kozol. Exhibit A to Weiner Affidavit. Defendant concedes that Danaher "apparently represented F & D on behalf of the principal...." Exhibit A to Defendant's Motion for Summary Judgment at ¶ 3.

sults of F & D's investigation. *Id.* at ¶ 7 and Exhibit C.

On July 22, 1985, Kozol informed Kaelin that he had been unable to reach any agreement with Kerlinsky regarding payment. Kaelin immediately telephoned Kerlinsky and said he would obtain authority from F & D's home office to issue a check, which would take a day or two. Kerlinsky replied, "Okay." *Id.* at ¶ 8. Kaelin telephoned the home office the same day and was told they would get back to him as soon as possible. *Id.* On July 23, 1985, Kaelin telephoned Kerlinsky and said he expected a response from F & D's home office by the following day. *Id.* at ¶ 9. That same day Kerlinsky filed this action in state court. Docket No. 3. On July 24, 1985, Kaelin received the authority to issue a check in payment of the execution. *Id.* at ¶ 10. He telephoned Kerlinsky immediately to say he was mailing the check, but Kerlinsky stated he had already filed the instant action. *Id.* That same day Kaelin wrote to Kerlinsky, enclosing a check in the full amount of the execution, $81,706.58, together with a request that a release and assignment form be executed and returned. *Id.* and Exhibit D.

On July 29, 1985, Kaelin received a letter from Kerlinsky dated July 26, 1985, returning the check for $81,706.58 and demanding full payment of the execution plus treble interest from the date of execution to date of payment. *Id.* at ¶ 11 and Exhibit E. Kerlinsky also demanded out-of-pocket expenses and a sheriff's bill, together estimated at $40.00, plus reasonable attorney's fees. *Id.* at Exhibit E. Kaelin wrote to Kerlinsky on August 1, 1985, enclosing the original check for $81,706.58, plus an additional check for $2,491.00 representing accrued interest of $2451.00 through August 1, 1985 and the estimated expenses of $40.00 referred to in Kerlinsky's July 26 letter. Kaelin made it clear in his letter that payment was made under reservation of all rights for both Kerlinsky *and* F & D. *Id.* at ¶ 12 and Exhibit F.

Kerlinsky responded with his letter dated August 6, 1985, stating that the entry fee for filing the instant lawsuit had been $55.00, not $40.00, and interest of $23.00, through August 2, 1985 was still owed. *Id.* at ¶ 13 and Exhibit G. Kerlinsky also stated his intention to proceed with this action, pursuant to Mass. Gen. Laws ch. 93A, seeking attorney's fees and multiple damages. *Id.* at Exhibit G. Kaelin again wrote to Kerlinsky on August 15, 1985, after being unable to get in touch with him on several occasions, enclosing a check for $38.00. *Id.* at ¶ 14 and Exhibit H.

On August 28, 1985 defendant filed a petition for removal with this court.

## III. DISCUSSION.

On a motion for summary judgment the court must view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party, here the plaintiff. *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922 (1st Cir.1983). However, since the facts detailed in affidavits submitted by defendant in support of its motion for summary judgment have not been opposed by plaintiff in the manner required by Fed.R.Civ.P. 56(e), they will be taken as true by this court. Fed.R.Civ.P. 56(e) provides in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule [by affidavits or affidavits supplemented by depositions, answers to interrogatories or further affidavits], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set froth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*See, Micro–Sparc, Inc. v. Weinstock*, 758 F.2d 790, 792 (1st Cir.1985). No affidavit has been filed by the plaintiff.

The facts, for the most part, do not appear to be in dispute. Plaintiff's claims are set out in five counts, which overlap considerably. In essence, the claims may be separated as follows: Count I, defendant's failure promptly to pay the executed judgment on the underlying contract action was

an unfair act or practice, constituting a willful and knowing violation of Mass. Gen. Laws ch. 93A; Count II, defendant's failure to make an offer of reasonable settlement on the underlying contract action was an unfair insurance practice constituting a willful and knowing violation of Mass. Gen. Laws ch. 176D, § 3(9)(f) and ch. 93A; Count III, defendant's failure to pay the executed judgment within thirty days of plaintiff mailing a "demand letter" on June 11, 1985, was an unfair act constituting a willful and knowing violation of ch. 93A; Count IV, sounding in tort, defendant's failure either to make a reasonable settlement offer or to pay the executed judgment promptly was "unreasonable and in bad faith," and Count V, sounding in tort, defendant's conduct in failing to settle or pay was "outrageous."

■ The Massachusetts Consumer Protection Act makes unlawful any, "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce...." Mass. Gen. Laws ch. 93A § 2(a). There is no dispute that defendant was conducting trade or commerce. Sections 9 and 11 of ch. 93A provide private causes of action for violations of § 2, but for different classes of plaintiffs. A plaintiff under § 9 is, "[a]ny person, other than a person entitled to bring action under section eleven of this chapter...." A plaintiff under § 11 is, "[a]ny person who engages in the conduct of any trade or commerce...." All that is required for a plaintiff to fall within the ambit of § 11 is some transaction in a business context. *International Fidelity Ins. Co. v. Wilson*, 387 Mass. 841, 852, 443 N.E.2d 1308 (1983). Plaintiff trustee ar-

gues that because *he*, an individual, brought this action, § 9 is the appropriate jurisdictional statute. That position is untenable. Plaintiff is simply proxy for the bankrupt, and this action clearly arose within the context of the underlying business contract between bankrupt and defendant's principal, Drury. Section 11, and *not* § 9, should be applied in this case.

■ Count III is based on defendant's failure to pay the executed judgment within thirty days of plaintiff mailing a ch. 93A demand letter. The mailing of a demand letter, however, is irrelevant to any action under § 11. Only § 9 makes any reference to such a letter. It is a jurisdictional prerequisite for maintaining an action under that section.[4] *Spring v. Geriatric Authority of Holyoke*, 394 Mass. 274, 287, 475 N.E.2d 727 (1985). For this reason, this court will recommend that defendant's motion be allowed as to Count III.

■ Count II alleges that defendant's failure to make an offer of reasonable settlement on the underlying contract action was an unfair insurance practice constituting a violation of Mass. Gen. Laws ch. 176D, § 3(9)(f)[5] and ch. 93A, §§ 2 and 9. A victim of an unfair insurance act or practice which violates ch. 176D may maintain a private cause of action under ch. 93A. *Dodd v. Commercial Union Ins. Co.*, 373 Mass. 72, 78, 365 N.E.2d 802 (1977); *see also, Shapiro v. American Home Assur. Co.*, 616 F.Supp. 906 (D. Mass. 1985).

The applicable limitations period for bringing an action under ch. 93A is the four years provided in Mass. Gen. Laws ch. 260, § 5A.[6] This court agrees with defend-

---

4. Mass.Gen.Laws ch. 93A, § 9(3) provides in relevant part:

 At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent....

5. Mass.Gen.Laws ch. 176D, § 3 provides in relevant part:

 (9) Unfair claims settlement practices: An unfair claim settlement practice shall consist of any of the following acts or omissions:

 (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

6. Mass.Gen.Laws ch. 260, § 5A provides in relevant part:

 Actions arising on account of violations of any law intended for the protection of consumers, including but not limited to the following: ... Chapter ninety-three A ... shall be commenced only within four years next after the cause of action accrues.

ant that it could only have been under a duty reasonably to "settle" the underlying contract claim prior to a verdict being returned for plaintiff.[7] Therefore, the cause of action accrued, at the latest, on November 24, 1980. Since the complaint was filed on July 23, 1985, more than four years later, the claim is barred as being untimely. This court will recommend that defendant's motion be allowed as to Count II.

■ Count I of the complaint alleges that defendant's failure promptly to pay the executed judgment was an unfair act which constituted a willful and knowing violation of ch. 93A. Mass. Gen. Laws ch. 93A is a statute of broad impact which forms a "comprehensive substantive and procedural package." *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 693, 322 N.E.2d 768 (1975). The statute's "basic policy is to ensure an equitable relationship between consumers and persons engaged in business." *Heller v. Silverbranch Construction Corp.*, 376 Mass. 621, 624, 382 N.E.2d 1065 (1978).

To maintain this action under § 11 of ch. 93A plaintiff has to show both that 1) Defendant, in failing to pay the judgment, engaged in an unfair act or practice made unlawful by § 2(a) and 2) Plaintiff has suffered a loss of money or property as a result of that unfair act or practice.[8] *Shapiro v. Public Service Mut. Ins. Co.*, 19 Mass.App.Ct. 648, 657, 477 N.E.2d 146 (1985).

Ch. 93A provides no definition of what constitutes an unfair act or practice made unlawful by § 2(a). Instead, § 2(b) directs that courts be guided by the interpretations of unfair acts and practices under § 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), as construed by the Federal Trade Commission and the federal courts. In *PMP Associates, Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d 915 (1975) the court concluded that the Supreme Court had "apparently approved the standards developed by the [Federal Trade] Commission regarding the considerations to be used in determining whether a practice is to be deemed unfair...." Considerations in making this determination are:

(1) Whether the practice ... is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen). If all three factors are present, the challenged conduct will surely violate Section 5 ... if it is exploitive or inequitable and if, in addition to being morally objectionable, it is seriously detrimental to consumers or others. 29 Fed.Reg. 8325, 8355 (1964).

*Id.* (quoting *Federal Trade Comm. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5, 92 S.Ct. 898, 905 n. 5, 31 L.Ed.2d 170 (1972). The First Circuit has recognized that these are the standards applied by the Massachusetts courts. *Kazmaier v. Wooten*, 761 F.2d 46, 51 (1st Cir.1985).

Defendant asserts there are different standards for what constitutes an unfair act under § 9 and § 11. Relying on *Lev-*

---

7. It should be noted that failure to effectuate settlement only becomes a violation of ch. 176D once liability has become reasonably clear. Although defendant has presented affidavits, unopposed by plaintiff, asserting it had good cause to believe there was a valid defense to the underlying claim, the court does not find it necessary to reach that issue. Plaintiff has made no separate claim that defendant had any duty to "settle" this matter after return of the verdict.

8. Mass.Gen.Laws ch. 93A, § 11 provides in relevant part:

Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an ... unfair or deceptive act or practice declared unlawful by section two ... may, as hereinafter provided, bring an action in the superior court....

Section 11 also contains an exception not applicable to this case:

Such person, if he has not suffered any loss of money or property, may obtain ... an injunction if it can be shown that the aforementioned unfair ... act or practice may have the effect of causing such loss of money or property.

*Id.*

*ings v. Forbes & Wallace, Inc.,* 8 Mass. App.Ct. 498, 396 N.E.2d 149 (1979), defendant argues that for a plaintiff to prevail under § 11, "[t]he objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Id.* at 504, 396 N.E.2d 149. However, in a later case the same court found a violation of §§ 2 and 11 despite the fact that defendant's conduct *did not* rise to "a level of rascality" described in *Levings, supra. MacGillivary v. W. Dana Bartlett Ins. Agency of Lexington, Inc.,* 14 Mass. App.Ct. 52, 59, 436 N.E.2d 964 (1982).

In fact, different standards do not appear to apply to unfair acts under ch. 93A, one for § 9 and another for § 11. There is simply the single set of guidelines approved by the Supreme Court in *Sperry, supra,* and adopted by the SJC in *PMP Associates, supra.* At the same time, whether a given act or practice is unfair or deceptive must be determined from the particular circumstances of each case. *Heller v. Silverbranch,* 376 Mass. 621, 626, 382 N.E.2d 1065 (1978); *Noyes v. Quincy Mutual Fire Ins. Co.,* 7 Mass. App.Ct. 723, 726, 389 N.E.2d 1046 (1979). Thus, it is not the definition of an unfair act which controls, but the context—the circumstances to which that single definition is applied.

Although neither the court nor the parties have discovered any case directly on point factually with the instant one, other cases, all brought under § 9, are instructive.

In *Swanson v. Bankers Life Company,* 389 Mass. 345, 450 N.E.2d 577 (1983), a § 9 case, an insurer initially denied medical coverage to the wife of its insured, where coverage hinged on whether or not her condition existed at the time of insured's retirement. Although plaintiff's counsel had earlier mailed a demand letter and received no response from defendant, the critical events for the court began on March 14, 1979. On that date defendant's representative spoke with plaintiff's counsel, the latter agreeing to: 1) obtain necessary medical authorizations and 2) wait until defendant had an opportunity to investi-

gate before filing a ch. 93A action. *Id.* at 348, 450 N.E.2d 577. Nevertheless, plaintiff filed the action on March 29, 1979. On April 23, 1979, having determined there was coverage, defendant informed plaintiff of its intention to pay, and did in fact mail a check for the total coverage on May 1, 1979. The court held there was no violation of ch. 93A, defendant having acted reasonably promptly once the necessary medical authorizations were provided. *Id.* at 350, 450 N.E.2d 577.

In *Whitney v. Continental Ins. Co.,* 595 F.Supp. 939 (D.Mass.1984), a § 9 case, the court found violations of ch. 93A where an insurer 1) failed to take *any* position for nine months on plaintiff's coverage under two policies, then twelve months later repudiated its earlier determination and 2) *never explained* its basis for denying coverage under one of the policies. The two acts were unfair insurance practices under ch. 176D, § 3(9)(b) and (n), respectively, failing to acknowledge and act reasonably promptly regarding an insurance claim and failing promptly to provide a reasonable explanation for denial of coverage.

In another § 9 case, although finding violations of ch. 93A where the defendant insurer had, in bad faith, failed to be responsive or cooperative with its insured and had never responded to inquiries regarding the basis for denial of coverage, the court stated that an insurer need not "forgo a thorough investigation of a claim that it has a reasonable basis for regarding as suspicious ..." in order to avoid a ch. 93A action. *Trempe v. Aetna Cas. and Sur. Co.,* 20 Mass. App.Ct. 448, 455, 480 N.E.2d 670 (1985). "All that is required is that the insurer deal with its insured with candor and fairness." *Id.*

The issue here is not one of a defendant denying coverage on a policy. The question is essentially whether defendant committed an unfair act in violation of ch. 93A, § 2 by taking from June 14, 1985 (the effective date of notification of the claim), until July 24, 1985 to issue a check in the amount of the executed judgment.

There is no dispute that F & D was jointly liable with its indemnitor, Drury, for

the executed judgment that issued on May 2, 1985. But, the uncontroverted facts disclose that defendant, which tendered its defense on the underlying action to Drury, had no knowledge of the judgment until June 14, 1985, when claims attorney Kaelin received Kerlinsky's demand letter. Moreover, until that date Kaelin had never heard of the case and he could not locate a file on it. Given these facts, it was entirely reasonable for defendant, before issuing a check, to investigate by consulting its own records and contacting its indemnitor. Defendant promptly advised Kerlinsky of its intention to do so. On June 30, 1985, F & D's home office, having earlier informed · Kaelin that it was not familiar with the case, advised that the file would be retrieved from storage.

Since they shared liability in the underlying action, if defendant's indemnitor, Drury, paid the judgment, then defendant would not have to. Thus, having discovered that Drury's counsel, Lee Kozol had represented both defendants in the underlying action, it was reasonable for Kozol, when contacted by Kaelin on July 12, 1985, to agree to try and work out an arrangement for payment with Kerlinsky. Moreover, Kaelin informed Kerlinsky of his conversation with Kozol.

When Kozol informed him on July 22, 1985 that no agreement could be reached, Kaelin immediately contacted Kerlinsky and said he would obtain authorization from F & D's home office to issue a check, which would take *a day or two.* And despite the fact that Kaelin telephone Kerlinsky again on July 23, stating he expected a response from the home office the following day, Kerlinsky filed this action the same day. Kaelin did receive the authorization on July 24, as he had told Kerlinsky he expected, and issued a check to plaintiff in the amount of the judgment.

On August 1, after Kerlinsky returned the draft, demanding treble interest from date of execution to date of payment, plus certain expenses, Kaelin mailed plaintiff the original check plus one covering the requested expenses and single accrued interest. After Kerlinsky wrote to defend-

ant, requesting an additional $23.00 for one day's interest and $15.00 for expenses, Kaelin mailed another check to plaintiff for $38.00.

Based on the facts, which—it is important to note again—are not disputed by any affidavit, this court concludes as a matter of law that defendant acted reasonably in investigating the underlying claim, keeping plaintiff fully informed of its position at all times and then making payment on the executed judgment plus interest. Defendant did not act in any immoral, unethical or unscrupulous manner, and its actions did not substantially injure plaintiff's bankrupt. The court finds that defendant did not violate ch. 93A, § 2.

 Even if the court did find a violation of ch. 93A, § 2, under § 11 plaintiff still must show a loss of money or property as the result of the unfair act or practice. Plaintiff cannot use the amount of the executed judgment itself as a basis for recovery under § 11. *Shapiro, supra,* 19 Mass. App.Ct. at 657, 477 N.E.2d 146, citing *DiMarzo v. Amer. Mut. Ins. Co.,* 389 Mass. 85, 101–02, 449 N.E.2d 1189 (1983). Plaintiff argues that attorney's fees in connection with researching and bringing this action constitute just such a loss. This court disagrees. First, the expenditure of attorney's time was neither necessary nor reasonable, given the fact that prior to filing this action plaintiff had reason to believe defendant would pay the judgment, and defendant did in fact make payment *one day* after filing, as promised. Second, plaintiff has not provided this court with an affidavit supporting his attorney's fee claim. The court will recommend that defendant's motion as to Count I be allowed.

 In Count IV, sounding in tort, plaintiff alleges defendant's failure either to make a reasonable offer of settlement in the underlying action or promptly to pay the executed judgment was "unreasonable and in bad faith." However, simply describing or characterizing defendant's conduct here as unreasonable and in bad faith does not state any recognized cause of

action in tort.[9] In *Brighams Cafe Inc. v. Price Bros.*, 334 Mass. 708, 137 N.E.2d 923 (1956) (rescript opinion), where plaintiff had generally characterized defendant's actions and statements as false and fraudulent, the court stated, "[s]uch general allegations cannot take the place of substantive allegations setting forth the essential elements of a recognized cause of action." *Id. See also, McCarthy v. Hawes*, 299 Mass. 340, 344, 12 N.E.2d 722 (1938), where the court held that descriptions of defendants' conduct as willful, malicious, fraudulent or false failed to state a cause of action in tort. Therefore, the court will recommend that defendant's motion be allowed as to Count IV.

In Count V, sounding in tort, plaintiff alleges that defendant's failure to settle or promptly pay the judgment was "outrageous" conduct. This claim must fail for the same reasons as Count IV. There is no such tort of outrageous conduct, standing alone. As defendant points out, extreme and outrageous conduct is an element of the tort intentional infliction of emotional distress, but applying the test enunciated in *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315 (1976), defendant's conduct here clearly was not "extreme and outrageous, ... beyond all possible bounds of decency," or "utterly intolerable in a civilized community." *Id.* at 145, 355 N.E.2d 315 (quoting Restatement (Second) of Torts § 46, comment d (1965)). Moreover, the bankrupt estate cannot sustain any emotional distress whatsoever. The court will recommend that defendant's motion be allowed as to Count V.

## IV. CONCLUSION.

For all the reasons stated above, this court therefore hereby recommends that defendant's Motion for Summary Judgment be ALLOWED in its entirety.[10]

---

9. Plaintiff argues that the defense that the tort claims fail to state a claim is untimely and should have been raised in a motion to dismiss. That is incorrect. Such a defense may even be raised at the trial on the merits. Fed.R.Civ.P. 12(h)(2).

10. The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection thereto with the Clerk of this court *within ten (10) days* of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See U.S. v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986); *U.S. v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982). *See also, Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985).