**Carmen FORCUCCI, Theresa Forcucci, Plaintiffs,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.**

**Civ. A. No. 90–13034–MA.**

United States District Court, D. Massachusetts.

March 29, 1993.

---

Mark D. Shuman, Boston, MA, for plaintiffs.

Mark P. Bailey, Nancy Regan, and Ralph C. Sullivan, Morrison, Mahoney & Miller, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is an action brought by Carmen and Theresa Forcucci against United States Fidelity and Guaranty Company, the issuer of their son Robert's auto insurance policy. The case is presently before me for review of the magistrate judge's recommendation that Fidelity's motions for partial summary judgment be allowed. The Forcuccis have filed objections to the magistrate's report, objections which I have considered thoroughly. While the Forcuccis' arguments are cogent, they do not carry the day.

The facts of this case are set forth in detail in the magistrate's report so I will revisit them only briefly. The Standard Massachusetts Personal Automobile Policy issued to Robert Forcucci included optional bodily injury coverage in the amount of $100,000.00 per person for injuries caused by an uninsured or underinsured motorist (hereinafter "UIM coverage"). On November 11, 1988, Robert's brother Cesare, a member of Robert's household, sustained fatal injuries as a result of a single-vehicle auto accident. The vehicle in which he was riding was insured by the Travelers Insurance Company. Fidelity was notified of the accident on April 26, 1989 and of the Forcuccis' claim for the $100,-000.00 UIM coverage on June 1, 1989. On November 9, 1989 the Forcuccis' counsel informed Fidelity that the operator of the accident vehicle had been convicted of motor vehicle homicide in connection with Cesare's death.[1] Included in that correspondence was the Victim Impact Statement submitted to the court by Cesare's mother, Theresa. Fidelity responded to this communication on December 4, 1989, when one of its representatives informed the Forcuccis' counsel that

---

1. There had initially been some doubt as to which of the occupants of the car was driving it at the time of the accident.

Fidelity declined to discuss resolution of the UIM claim until it completed an investigation into the potential liability of a third party. On December 11, Fidelity received statutory notice from the Forcuccis' counsel of the Forcuccis' belief that Fidelity was engaging in unfair claims settlement practices. Fidelity responded on January 11, 1990, offering $25,000.00 in full and final settlement of the UIM claim. The Forcuccis rejected this offer and, pursuant to the terms of the policy, filed a demand for arbitration. The arbitration took place on March 23, 1990 and resulted in an award of $55,000.00. The Forcuccis subsequently filed suit, alleging both that Fidelity had engaged in unfair and deceptive settlement practices and that, by forcing them to resort to arbitration, Fidelity had intentionally inflicted emotional distress upon them.

After setting forth the legal standard, the magistrate addressed and granted Fidelity's motion for summary judgment on the claims of unfair settlement practices,[2] finding that Fidelity's submission of a settlement offer thirty-one days after its receipt of the Forcuccis' demand letter was prompt[3] and that the initial offer of $25,000.00 was not unreasonable. The Forcuccis contend that in arriving at these conclusions, the magistrate improperly made four findings of fact: 1) that Fidelity's actions prior to its receipt of the Forcuccis' demand letter were reasonable; 2) that Fidelity's response to the Forcuccis' demand letter was prompt; 3) that the $25,000.00 offer by Fidelity was not "substantially less" than the $55,000.000 awarded by the arbitrator;[4] and 4) that Fidelity's settlement offer was made in good faith.

There may be some merit to the Forcuccis' contention that summary judgment is not the appropriate stage for resolving questions of reasonableness and promptness. *See Travelers Ins. Co. v. Waltham Indus. Laboratories Corp.,* 722 F.Supp. 814, 831 (D.Mass.1988) ("Summary judgment in this area of unfair and deceptive practices is particularly difficult because the statute speaks in terms of 'reasonableness,' a judgment generally reserved for the fact finder.") (footnote omitted), *aff'd in relevant part,* 883 F.2d 1092 (1st Cir.1989). Nevertheless, these questions may be, and frequently are, resolved at this stage of the proceeding if, as is the case here, none of the material underlying facts are genuinely in dispute. *See id.* at 831–33 (determining reasonableness of insurer's delay). *Cf. Whitney v. Continental Ins. Co.,* 595 F.Supp. 939, 946–47 (D.Mass.1984) (finding, on motion for summary judgment, that insurer failed to act promptly; refraining from ruling on section 3(9)(f) claim only because genuine issue existed as to whether liability was "reasonably clear").

Therefore, given that I concur with the magistrate's findings that Fidelity's offer was neither unreasonably slow nor unreasonably low, I accept his recommendation and grant Fidelity's motion for summary judgment on Counts I and II. I also accept the magistrate's reasoning on the question of intentional infliction of emotional distress and endorse

**2.** The Massachusetts Unfair Claims Settlement Practices Act defines unfair or deceptive acts or practices in the business of insurance as, *inter alia,* the failure "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear...." Mass.Gen.L. ch. 176D, § 3(9)(f).

**3.** As the magistrate noted, only two months had elapsed from early November, the time that liability under the policy became "reasonably clear," to early January, when Fidelity made its settlement offer. The Forcuccis argue that thirty-one days had elapsed from the time Fidelity received their demand letter, one day more than "the 30 day period established by statute." Plaintiffs' Objections at 6. It is thus important to note that there is no statutory or case law definition of "prompt" for purposes of section 3(9)(f) of the Unfair Claims Settlement Practices Act.

The Forcuccis' reference is to section 9(3) of the Massachusetts Consumer Protection Act, Mass. Gen.L. ch. 93A, § 9(3), which provides that if the recipient of a 93A demand letter fails to make a reasonable offer of settlement within thirty days, it is exposed to 93A damages. I therefore decline to accept thirty days as a bright line definition of promptness in this case, where Fidelity was only one day late in responding and the thirty-day response period coincided squarely with the winter holiday season.

**4.** The Unfair Claims Settlement Practices Act also forbids insurers from "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds...." Mass. Gen.L. ch. 176D, § 3(9)(g).

his decision to grant Fidelity's motion for summary judgment on Counts III and IV.

SO ORDERED.

REPORT AND RECOMMENDATION ON MOTION OF THE DEFENDANT, UNITED STATES FIDELITY & GUARANTY COMPANY, FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM OF ALLEGED VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT (# 22) AND MOTION OF THE DEFENDANT, UNITED STATES FIDELITY & GUARANTY COMPANY, FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (# 23)

COLLINGS, United States Magistrate Judge.

## I. THE FACTS

Plaintiffs Carmen Forcucci and Theresa Forcucci, husband and wife, resided with their sons, Robert M. Forcucci and Cesare A. Forcucci in Canton, Massachusetts. On or about June 11, 1988, defendant United States Fidelity and Guaranty Company (hereinafter "USF & G") issued a Standard Massachusetts Personal Automobile Policy No. 2020275786 (hereinafter "the policy") effective through June 11, 1989 to Robert M. Forcucci. Inter alia, the policy included optional bodily injury coverage in the amount of $100,000.00 per person for injuries caused by an uninsured or underinsured automobile (hereinafter "UIM coverage"). This case arises out of a claim for underinsured motorist benefits afforded by the policy.

The pertinent facts are not in dispute. On November 11, 1988, Cesare Forcucci sustained fatal injuries in an accident in Stoughton, Massachusetts involving a single vehicle in which Mr. Forcucci was riding as a passenger. (List of Exhibits # 25, Exh. A, Complaint, ¶ 5; Exh. B, Answer and Jury Claim of Defendant, United States Fidelity and Guaranty Company, ¶ 5) (hereinafter "complaint" and "answer"). In late April of 1989, plaintiffs' counsel advised USF & G of

Mr. Forcucci's death and requested reimbursement under the terms of the policy for post-accident medical costs in the sum of $10,000.00. (Plaintiffs' Record Appendix # 29 at pp. 30–31). By letter to USF & G dated June 1, 1989, plaintiffs' counsel inquired with respect to the status of the medical payments and further made claim for the $100,000.00 underinsured motorist coverage. (Plaintiffs' Record Appendix # 29 at pp. 38–39). USF & G paid the $10,000.00 in medical payments benefits. (Complaint, Exh. 7).

In or about the latter part of September, 1989, Travelers Insurance Company, the insurer of the operator of the accident vehicle, offered the full $100,000.00 available under the driver's bodily injury and underinsured motorist coverage in settlement of the claims made on behalf of the decedent's estate. (Complaint, ¶ 5 and Exh. 2; Answer, ¶ 5). In an October 13, 1989 letter to plaintiffs' counsel, USF & G consented to the settlement proffered by Travelers Insurance Company. (Complaint, ¶ 6 and Exh. 3; Answer, ¶ 6).

On or about November 9, 1989, USF & G was informed by plaintiffs' counsel that the operator of the accident vehicle had been convicted of motor vehicle homicide in connection with the death of Cesare Forcucci. (Complaint, Exh. 4; List of Exhibits # 25, Exh. C, Deposition of Deborah Duncan at p. 99 and Exh. 6). Included with the letter was a copy of the Victim Impact Statement submitted by plaintiff Theresa Forcucci to the judge presiding at the trial. (Complaint, ¶ 14; Answer, ¶ 14; Plaintiffs' Record Appendix # 29 at pp. 44–52). Counsel for the plaintiffs reiterated that claim was made for the full $100,000.00 sought for the wrongful death of Cesare Forcucci on behalf of his heirs at law, his parents, Carmen and Theresa Forcucci. (Complaint, Exh. 5; Deposition of Deborah Duncan, Exh. 3 and 7).

On December 5, 1989, plaintiffs' counsel sent a letter to USF & G by certified mail wherein notice was given pursuant to Massachusetts General Laws, Chapter 93A that USF & G was allegedly engaging in unfair claims settlement practices, and demand was made for the $100,000.00 of underinsured motorist coverage under the policy. (Complaint, ¶ 8 and Exh. 4; Answer, ¶ 8). En-

closed with the letter was a copy of the Massachusetts Supreme Judicial Court's decision in the case of *Bertassi v. Allstate Insurance Company*, 402 Mass. 366, 522 N.E.2d 949 (1988). (*Id.*) The return receipt reflects that the letter was received by USF & G on December 11, 1989. (Complaint, ¶ 8 and Exh. 7; Answer, ¶ 8).

By letter dated January 11, 1990, USF & G responded to the December 5th letter from plaintiffs' counsel, offering $25,000.00 in full and final settlement of the UIM claim. (Complaint, ¶ 15 and Exh. 7; Answer, ¶ 15). On or about January 18, 1990, pursuant to the terms of the USF & G policy, counsel for the plaintiffs filed a Demand for Arbitration with the American Arbitration Association. (List of Exhibits, # 25, Exh. E, Deposition of Joanne McEachern, Exh. 2). The arbitration hearing was scheduled for March 23, 1990. (Deposition of Joanne McEachern, Exh. 17).

On the scheduled date, the arbitration proceeding convened at the law offices of Philip Tirrell, the appointed arbitrator. (Defendant USF & G's Memorandum # 24 at p. 5; Plaintiffs' Memorandum # 28 at p. 8). Those attending the hearing were Mr. Tirrell, plaintiffs' attorney Mark D. Shuman, the plaintiffs Carmen and Theresa Forcucci, and Attorney Drew Elinoff representing USF & G. (Plaintiffs' Memorandum # 28 at p. 8). Prior to the commencement of the arbitration, the two attorneys met privately. (Defendant USF & G's Memorandum # 23 at p. 5; Plaintiffs' Memorandum # 28 at p. 8). Attorney Elinoff told plaintiffs' counsel that he was prepared to recommend a settlement figure higher than the $25,000.00 earlier offered by USF & G. (List of Exhibits # 25, Exh. 6, Admission No. 12). Plaintiffs' attorney told counsel for USF & G that the claims of Carmen and Theresa Forcucci for both underinsured motorist benefits and for damages they sustained as a result of USF & G's unfair claim settlement practices could be settled for $100,000.00. (*Id.*, Admission No. 13). No settlement was reached.

The arbitration hearing proceeded, lasting approximately thirty to forty-five minutes. (List of Exhibits # 25, Exh. F, Deposition of Drew Elinoff at p. 35). Only plaintiff Theresa Forcucci testified; neither Carmen Forcucci nor Robert Forcucci offered any testimony. (List of Exhibits # 25, Exh. 6, Admissions Nos. 14, 15; Plaintiffs' Memorandum # 28 at p. 9). Immediately following the hearing, at the arbitrator's suggestion, counsel made another attempt to resolve the matter. Plaintiffs' counsel reiterated his earlier position, i.e., settlement of both the UIM claim and the claim for intentional infliction of emotional distress for the $100,000.00 coverage, which was rejected by USF & G's attorney. On April 16, 1990, the Award of Arbitration issued pursuant to which the estate of the decedent was awarded $55,000.00 in settlement of the UIM claim. (List of Exhibits # 25, Exh. E, Deposition of Joanne McEachern, Exh. 24).

## II. THE COMPLAINT

In November of 1990, the plaintiffs filed their complaint in the Norfolk County Superior Court. USF & G subsequently removed the case to the federal court. Counts I and II of the four-count complaint are claims by Theresa Forcucci and Carmen Forcucci respectively against USF & G for violation of Massachusetts General Laws, Chapter 93A. In Count III, Theresa Forcucci alleges that, by failing to make a reasonable offer on settlement of the UIM claim, USF & G forced the plaintiff to initiate arbitration proceedings. Theresa Forcucci contends that the emotional distress that she endured in preparing for, and participating in, the arbitration hearing was intentionally inflicted upon her by USF & G. Carmen Forcucci alleges an identical intentional infliction of emotional distress claim in Count IV.

## III. THE SUMMARY JUDGMENT MOTIONS

### A. The Standard

The summary judgment standard in this Circuit is familiar. When considering the propriety of the entry of summary judgment, the Court must determine whether:

> ... the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is a genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. In making this assessment, the Court is to examine the materials presented "in the light most favorable to the nonmoving party and indulge in all inferences in that party's favor." *Moody v. Boston and Maine Corporation*, 921 F.2d 1, 5 (1st Cir.1990) (citation omitted).

A factual dispute which is neither genuine nor material will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding whether a factual dispute is genuine the Court must determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* In weighing whether a factual dispute is material the Court must examine the substantive law of the case, for "only disputes over the facts that might effect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.*

Rule 56 does not permit the party opposed to the summary judgment motion to rest upon the mere allegations or denials in its own pleadings. Rather, as stated by the Supreme Court:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Having set forth the applicable standards, the Court now turns to address the various grounds upon which USF & G claims to be entitled to judgment as a matter of law.

### B. Discussion Re: Claims of Unfair Practices

■ USF & G's initial motion for partial summary judgment relates to the claims set forth in Counts I and II for violation of Massachusetts General Laws, Chapter 93A, the consumer protection statute. A second law, Massachusetts General Laws, Chapter 176D § 2, prohibits comparable unfair or deceptive acts or practices specifically within the insurance business. In discussing the latter statute, the First Circuit has recognized that the conduct prohibited

> ... extends to "unfair claim settlement practices," which the statute defines as including "[f]ail[ure] to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." *Id.* at § 3(9)(f). Those injured by insurance practices proscribed under Chapter 176D may sue under Chapter 93A. (citations omitted)

*Peckham v. Continental Casualty Insurance Co.*, 895 F.2d 830, 839 (1st Cir.1990).

The plaintiffs submit that there are two issues of material fact involved in these claims: (1) whether USF & G engaged in unfair claims settlement practices by refusing to come forward with a reasonable offer of settlement; and (2) whether USF & G, in response to plaintiffs' Demand Letter sent pursuant to Massachusetts General Laws, Chapter 93A § 9(3), failed to come forward with a reasonable offer of settlement. (Plaintiffs' Memorandum # 28 at p. 2).

The USF & G policy provided underinsured motorist benefits. As such, the policy did not become operative until the primary insurer, Travelers Insurance Company, settled the wrongful death claim against the operator of the accident vehicle for the full amount of the policy. Upon request, USF & G promptly assented to the settlement which was ultimately effectuated in late October of 1989.

The plaintiffs admit that initially there was some question as to which of the two occupants was in fact driving the vehicle at the time of the accident. (Plaintiffs' Record Appendix # 29 at p. 57). Upon notification in early November of 1989 that the owner of the vehicle had been convicted of motor vehicle homicide, liability under the USF & G policy became "reasonably clear."

According to the plaintiffs, on December 4, 1989, Deborah Duncan, the USF & G adjuster handling the UIM claim, telephoned their

attorney. (Plaintiffs' Memorandum # 28 at p. 5). In response to counsel's inquiry, Ms. Duncan purportedly stated that USF & G would not discuss resolution of the UIM claim until an investigation into a potential liquor liability claim against a nightclub had been completed. (Affidavit of Mark D. Shuman # 30, ¶ 2; Plaintiffs' Record Appendix # 29 at pp. 57, 66B and 66C). Plaintiffs' attorney advised that any potential liability of a third party was irrelevant to USF & G's obligation to pay UIM benefits in light of the decision in *Bertassi v. Allstate Insurance Company*, 402 Mass. 366, 522 N.E.2d 949 (1988).

The following day, December 5, 1989, the Forcuccis' attorney sent the 93A letter with a copy of the *Bertassi* decision enclosed. On January 11, 1990, thirty-one days after receipt of the demand letter, USF & G responded in writing offering to settle the UIM claim for $25,000.00.

Both Deborah Duncan and her supervisor, Francis Logue, testified that based upon their investigation, evaluation and consultation, they agreed that the Forcuccis' claim had a total value in the range between $125,000.00 and $160,000.00. (List of Exhibits # 25, Exh. C, Deposition of Deborah Duncan at pp. 90–93; 2–17; 2–27). In light of the $100,000.00 the estate of the decedent had received from the Travelers Insurance Company, the value of the UIM claim was placed in the $25,000.00 to $60,000.00 range. (*Id.*) Ms. Duncan and Mr. Logue decided to make an initial offer of $25,000.00 to settle the UIM claim. (Deposition of Deborah Duncan at p. 69; Deposition of Francis A. Logue at p. 94).

A memo to the file dated March 21, 1990 entered by Mr. Logue states that "legal chose today 2 days before arbitration to tell us they feel the [Forcuccis'] claim is worth $100,000.00 and that we should settle the claim at this point." (Plaintiffs' Record Appendix # 29 at pp. 78–79). Mr. Logue also testified that at some point not specified in the record, he communicated with a Mr. Erkfitz of the Home Office Liability Claims Division who stated "that if this case is settled or resolved for an amount less than the limit, we will be lucky." (Plaintiffs' Record Appendix # 29, Deposition of Francis A. Logue at pp. 2–14).

In essence, the plaintiffs' claim is that in failing to make an offer of settlement on the UIM claim between early November and early December, 1989, and, thereafter, in making a low offer of settlement in response to a Chapter 93A letter, that USF & G engaged in unfair claim settlement practices. With respect to the latter proposition, there is no argument advanced that, as a matter of law, USF & G was liable for the full amount of coverage on the underinsured motorist claim. Indeed, the fact that the policy itself contained an arbitration provision indicates the expectation that the value of such a claim can reasonably be the subject of dispute. Clearly, after due consideration of the relevant attendant circumstances, the question is one of judgment.

From the plaintiffs' perspective, it appears that any offer of less that the policy limits would be viewed as unreasonable. However, USF & G assessed the value of the Forcuccis' UIM claim as being between $25,000.00 and $60,000.00. The independent evaluation of the arbitrator who ultimately made an award of $55,000.00 supports the conclusion that USF & G's valuation was sound. While the insurance company's initial position that further investigation of potential third-party liability was required before an offer would be made is somewhat troubling, upon being advised of the *Bertassi* decision and receipt of the demand letter, USF & G acted promptly, i.e., within thirty-one days. In total, the time frame from the point when liability under the policy became reasonably clear and the time when an offer was made was approximately two months.

It is true that USF & G's offer was on the low end of its own valuation. However, the plaintiffs made no attempt to negotiate a higher sum. That USF & G did not increase its offer in the absence of a counter-demand cannot be viewed as an unfair settlement practice. Moreover, upon receipt of the offer, the Forcuccis immediately filed a claim for arbitration as was their right under the policy. Attempts to negotiate a settlement both prior and subsequent to the arbitration

hearing were unsuccessful. The award rendered by the arbitrator was promptly paid.

To avoid summary judgment, plaintiffs must demonstrate that there is evidence from which a trier of fact could find that USF & G, in disposing of plaintiffs' UIM claim, engaged in "unfair claim settlement practices" which the statute defines as including "[f]ailure to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." M.G.L.A. Chapter 176D, § 3(9)(f). However, the statute does not require that an insurer accede to the amount of plaintiffs' demand even if liability has become reasonably clear. As Judge Skinner has pointed out:

> [T]he settlement of personal injury claims is the subject of negotiation, and insurance companies and their claims agents are entitled to seek the best bargain they can make subject to the constraints of M.G.L. c. 176D, to protect their insured and minimize their losses.

*Curtis v. Duffy,* 742 F.Supp. 34, 38 (D.Mass., 1990). This concept is also implicit in the statute itself. Chapter 176D, § 3(9)(g) lists another "unfair claim settlement practice" as being:

> Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

Liability attaches only if the amount offered in settlement is "substantially less" than what is recovered after litigation. If the amount offered is merely less but not substantially so, no unfair claim settlement practice has occurred.

To be sure, it has been held that an insurer can be found to have engaged in unfair claim settlement practices when it acts pursuant to a policy not to settle claims until after suit except for a small amount. *Whyte v. Connecticut Mutual Insurance Co.,* 818

F.2d 1005, 1011–2 (1st Cir.1987). But there is no evidence in this case that USF & G has any such policy.

If there were evidence that the offer of $25,000 was *not* made as part of a "good faith" judgment that this was within the range of what plaintiffs' claim was worth but was rather made for some other reason, such as dislike of the plaintiffs, or their attorney, or for some other arbitrary reason unrelated to the merits of the claim, plaintiffs would be entitled to a trial. *Id.* at 1012. But there is no such evidence. The offer of $25,000 was made in January; the fact that in March, the insurer's legal office opined that the claim was worth $100,000 does not mean that the $25,000 offer in January was not in good faith. There is no evidence that prior to making the $25,000 offer, any other person at USF & G opined that the claim was worth more.[1] Further, it is undisputed that at the arbitration hearing, USF & G was prepared to offer more but declined to do so in view of plaintiffs' continued insistence that settlement was possible only if USF & G paid the policy limit.

On these facts, it does indeed become significant that the arbitrator's award ($55,000) was within the range of USF & G's valuation ($25,000—$60,000) and that it was farther removed from plaintiffs' demand ($100,000) than USF & G's offer. Applying the standard set forth in M.G.L.A. Chapter 176D, § 3(9)(g)[2], although USF & G's offer was "less" than the amount recovered, it cannot be said, on the undisputed facts of this case, that it was "substantially" so. In addition, there is no evidence that USF & G "act[ed] in any immoral, unethical or unscrupulous manner" such as would support a claim alleging unfair settlement practices. *Kerlinsky v. Fidelity & Deposit Company of Maryland,* 690 F.Supp. 1112, 1120 (D.Mass.1987).

---

1. It is unknown when Mr. Erkfitz of the Home Office Liability Claims Division rendered his opinion. *See* p. 201, *supra.*

2. Plaintiffs are clearly correct in stating that the fact that the arbitrator's award was closer to USF & G's offer than it was to their demand does not estop the plaintiffs from maintaining

that USF & G engaged in "unfair claim settlement practices." *See* M.G.L.A. Chapter 93A, § 8. But it does not follow that the circumstance cannot be taken into consideration in determining whether there is evidence upon which a finding of "unfair claim settlement practices" can be made.

Thus, I shall recommend that the Motion of the Defendant United States Fidelity & Guaranty Company, for Partial Summary Judgment on Plaintiffs' Claim of Alleged Violations of the Massachusetts Consumer Protection Act (# 22) be allowed.

### C. Discussion Re: Claims of Infliction of Emotional Distress

The second motion for partial summary judgment addresses Counts III and IV of the complaint.

■ In order to establish liability for the tort of intentional infliction of emotional distress, the plaintiffs must plead and prove the following four elements:

> ... (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct ...; (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community," ...; (3) that the actions of the defendant were the cause of the plaintiff's distress ...; and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it."

*Agis v. Howard Johnson Company*, 371 Mass. 140, 145, 355 N.E.2d 315, 319 (1976) (citations omitted); *Dean v. City of Worcester*, 924 F.2d 364, 369 (1st Cir.1991); *Redgrave v. Boston Symphony Orchestra, Inc.*, 557 F.Supp. 230, 236 (D.Mass.1983). USF & G contends that the plaintiffs have failed to plead the requisite elements of the tort in their complaint. However, recognizing that leave to amend is liberally granted, USF & G does not rely solely upon the deficiency in the pleadings as the basis for its motion. Rather, it is argued that as a matter of law, USF & G's conduct as alleged cannot be viewed as rising to the level of "extreme and outrageous" or "beyond all possible bounds of decency." In the first instance, that is a question for the Court to decide.

*Redgrave v. Boston Symphony Orchestra, Inc.*, supra, 557 F.Supp. at 236 n. 7.

■ The conduct of which the Forcuccis complain is that, having been put on notice of the grief experienced by the plaintiffs upon the death of their son via the Victim Impact Statement and letters from their attorney, USF & G nevertheless failed to make a reasonable offer of settlement on the UIM claim, thereby forcing the plaintiffs to prepare for and participate in an arbitration proceeding. According to the plaintiffs, in light of their evidenced vulnerability, USF & G knew or should have known that such participation would subject the Forcuccis to emotional trauma and distress.

There can be no question that the death of a child is both a tragic and painful event for parents to endure. One might expect that to relive the experience in the course of an adjudicative process would be emotionally stressful, particularly if the family had enjoyed a close and loving relationship. However, that is not to say that when claimants and an insurance company are unable to reach a negotiated settlement of a UIM claim such that resort must be taken to arbitration as provided by the policy that the insurance company has intentionally inflicted emotional distress upon the claimants.

The facts are that in early November of 1989, upon the conviction of the driver of the accident vehicle, USF & G's liability under the policy became reasonably clear.[3] Approximately one month thereafter, plaintiffs' counsel sent USF & G a 93A letter demanding the $100,000.00 UIM coverage. USF & G responded thirty-one days later with an offer of $25,000.00. Upon receipt of USF & G's offer, plaintiffs' attorney filed a demand for arbitration.

At no time did counsel for the Forcuccis make a counter-demand or otherwise attempt to compromise or negotiate the amount of the claim; demand for full coverage under the policy was steadfastly maintained. USF & G participated in the arbitration as originally scheduled, making no attempt to delay the prompt resolution of the

---

3. As previously noted, there had been a legitimate question with respect to which of the two occupants of the accident vehicle had in fact been driving.

dispute. There is no contention that the cross examination of Theresa Forcucci, the sole witness, was in any manner elongated, improper or harassing.

USF & G's conduct upon which the Forcuccis premise their claim "is neither the kind of systemic harassment nor the single but dramatically cruel incident that the courts have found to be sufficiently 'outrageous' to sustain a claim of infliction of emotional distress." *Redgrave v. Boston Symphony Orchestra, Inc.,* supra, 557 F.Supp. at 236. Reasonable minds can differ as to the value of an UIM claim. The policy provided a mechanism, i.e., arbitration, pursuant to which the disagreement could be resolved. It was the plaintiffs who initiated the process, apparently having chosen to arbitrate rather than attempt to negotiate the difference between the offer and the demand. USF & G's conduct and participation in the arbitration proceeding, as a matter of law, cannot be viewed as either "extreme and outrageous" or "beyond all possible bounds of human decency."

For the reasons stated, I shall recommend that the Motion of the Defendant, United States Fidelity & Guaranty Company for Partial Summary Judgment on Plaintiff's Claim for Intentional Infliction of Emotional Distress (# 23) be allowed.

## IV. RECOMMENDATIONS

I RECOMMEND that the Motion of the Defendant United States Fidelity & Guaranty Company, for Partial Summary Judgment on Plaintiffs' Claim of Alleged Violations of the Massachusetts Consumer Protection Act (# 22) and the Motion of the Defendant, United States Fidelity & Guaranty Company for Partial Summary Judgment on Plaintiff's Claim for Intentional Infliction of Emotional Distress (# 23) be ALLOWED.

## V. REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and these recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).