RICARDO GUITY vs. COMMERCE INSURANCE COMPANY.

No. 92-P-1747.

Suffolk. December 7, 1993. - April 14, 1994.

Present: ARMSTRONG, KASS, & SMITH, JJ.

*Practice, Civil,* Jury trial, Consumer protection case. *Consumer Protection Act,* Insurance, Jury trial, Unfair act or practice. *Insurance,* Motor vehicle insurance, Settlement of claim. *Damages,* Consumer protection case.

A Superior Court judge correctly declined to award multiple damages and counsel fees in an action under G. L. c. 93A and G. L. c. 176D, § 3(9)(*g*), after the plaintiff had been awarded damages by a jury for an insured loss in a contract action against an insurance company, where the record supported the judge's finding that the insurance company committed no unfair settlement practice in declining, in the circumstances, to pay the plaintiff's claim under its policy. [342-344]

CIVIL ACTION commenced in the Superior Court Department on April 26, 1990.

A claim for breach of an insurance contract was tried before *Margot Botsford,* J., and claims for multiple damages and attorney's fees under G. L. c. 176D, § 3(9)(*g*), and G. L. c. 93A, the Consumer Protection Act, were heard by her.

*William F. Spallina* for the plaintiff.

*Carolyn DeSpirito* for the defendant.

KASS, J. In broad outline, a judge of the Superior Court found that: Ricardo Guity, a claimant under a motor vehicle insurance policy, had failed to cooperate with the insurer; the insurer had conscientiously investigated Guity's claim; and the insurer had good reason to think that Guity's claim was tainted with fraud. On the basis of those findings, the judge ruled that, although Guity had recovered $18,075 on the insurance policy in a contract action tried to a jury, he could

not recover claims for multiple damages and counsel fees under G. L. c. 93A and G. L. c. 176D, § 3(9)(*g*), as appearing in St. 1972, c. 543, § 1. The latter statute defines as an unfair act or practice in the business of insurance: "Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." We affirm.

Guity had reported his automobile, a 1985 BMW 745i, stolen on November 6, 1988, from a shopping mall while he was watching a movie, "Who Framed Roger Rabbit." For reasons we shall detail, the insurer, Commerce Insurance Company (Commerce), denied payment and also declined settlement in response to a c. 93A letter from Guity's lawyer. Guity filed a two-count complaint: the first count claiming under the insurance contract and the second demanding triple damages and legal fees.

The contract claim was tried before a jury (Guity had claimed a jury on his complaint) and submitted to that jury on special questions, to which the jurors answered that: Guity had not made material misrepresentations either in applying for the Commerce policy or in his claim of loss for his BMW; he had not failed to cooperate with Commerce's investigation of the claimed theft; and that the cash value of the car before the loss had been $18,075.[1] The trial judge then heard supplementary evidence on the c. 93A claim and, on the basis of that evidence, as well as the evidence she had heard at the proceedings before the jury, made her own independent findings (adverse to the plaintiff), as she was free to do. *Chamberlayne Sch. and Chamberlayne Jr. College* v. *Banker*, 30 Mass. App. Ct. 346, 354-355 (1991). *Wyler* v. *Bonnell Motors, Inc.*, 35 Mass. App. Ct. 563, 566-568 (1993). There is no right to a trial by jury in an action under c. 93A. *Nei* v. *Burley*, 388 Mass. 307, 315 (1983). As those cases make clear, the judge's independent findings may be contrary to those found by the jury. *W. Oliver Tripp Co.* v.

---

[1] We have telescoped what the jury found in responses to seven separate special questions.

*American Hoechst Co.*, 34 Mass. App. Ct. 744, 753-754 (1993). *Wallace Motor Sales, Inc.* v. *American Motors Sales Corp.*, 780 F.2d 1049, 1063-1067 (1st Cir. 1985). Guity's position on appeal is that his recovery on the insurance contract automatically established a violation by Commerce of G. L. c. 176D, § 3(9)(g), and, as that is an unfair act, a violation of G. L. c. 93A. Otherwise stated, no matter how cogent the reasons of an insurer for declining payment on a policy, if the policyholder obtains a judgment on the policy (e.g., by scoring with a jury), the plain language of c. 176D, § 3(9)(g), entitles the policyholder to c. 93A damages.

Before examining that proposition, it will be helpful to return to the facts found by the judge. When he had applied for automobile insurance, Guity had given as his address that of his parents in the Hyde Park section of Boston, rather than his own in the Mattapan section. His application for insurance made in May, 1988, listed an odometer reading of 29,900 miles, but the vehicle, when found after its reported theft, showed an odometer with 29,449 miles on it.[2] The car when found had been vandalized, a total wreck, yet the ignition system, door locks, and trunk lock were intact. Guity claimed to have paid $25,000 for his BMW, but documents filed with the Registry of Motor Vehicles stated a sales price of $11,500. Documents of the United States Customs Service estimated a value of $5,866.67, apparently owing to the vehicle's nonconformance with applicable environmental specifications.

Commerce promptly began investigation of the reported theft. Its investigator, Franklin Jones, experienced some difficulty in catching up with Guity, who was not at the address he had listed when obtaining his policy. Jones asked Guity for an affidavit and to conduct a taped interview. Guity provisionally declined either affidavit or interview until he talked to his lawyer. When Jones pressed his requests, Guity re-

---

[2]At a certain point Guity had allowed his insurance to lapse and when he reapplied for insurance in October, 1988, one month before he reported his car stolen, he listed mileage of 31,000 miles.

sponded that he had spoken to his lawyer and would neither put anything in writing nor submit to a tape-recorded interview.

The applicable insurance policy, the standard Massachusetts form, provided in connection with claims procedures:

> "If you are filing a claim for damage to your auto, you or someone on your behalf must file a proof of loss within 91 days after the accident.
>
> "We may also require you to submit to an examination under oath.
>
> "After an accident or loss, you . . . must cooperate with us in the investigation, settlement and defense of any claim or lawsuit . . . ."

By letter dated March 13, 1989, Commerce denied coverage because of Guity's failure to cooperate and the submission of false documents at the time of purchasing his insurance.[3]

Based on her subsidiary findings, the judge further found that "Commerce began the investigation of Guity's claimed loss reasonably promptly . . . . Commerce thereafter proceeded with reasonable efficiency and thoroughness in its investigation, and promptly informed Guity (by letter dated November 28, 1988) that . . . [he] was failing to cooperate with the investigation. Guity did fail to cooperate by declining or refusing to be interviewed or to fill out any affidavit describing the loss." On the basis of the information Commerce had developed and Guity's refusal to cooperate, the judge ruled that Commerce reasonably denied coverage for the loss.

Subsection (9) of G. L. c. 176D, § 3, catalogs fourteen categories of unfair claim settlement practices. The plaintiff

---

[3]In addition to the policy provisions quoted above, to which the trial judge referred, the policy also provided that the insurance company may refuse to pay claims under the optional coverages in the policy (which include theft coverage) if the insured gave false information about the place where the covered auto is principally garaged.

stakes his case on the seventh of those, subparagraph (*g*) of § 3(9). As in any case of statutory interpretation it is well to begin with a close look at the words of the statute, which we restate: "[A]n unfair claim settlement practice shall consist of any of the following acts or omissions . . . (*g*) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." The quoted words, particularly "offering substantially less than the amounts ultimately recovered," express a legislative purpose to penalize the practice of "low-balling," i.e., offering much less than a case is worth in a situation where liability is either clear or highly likely. When the Legislature treated with outright denial of a claim, it knew how to do so, as in § 3(9)(*n*), as appearing in St. 1972, c. 543, § 1, which describes as an unfair settlement practice "[f]ailing to provide promptly a reasonable explanation . . . for denial of a claim. . . ." The language of subparagraph *g* presupposes some offer — a markedly inadequate one — not the absence of any offer at all. Thus, it has been said that "[l]iability under c. 176D and c. 93A does not attach merely because an insurer concludes that it has no liability under an insurance policy and that conclusion is ultimately determined to have been erroneous." *Pediatricians, Inc.* v. *Provident Life & Acc. Ins. Co.*, 965 F.2d 1164, 1173 (1st Cir. 1992).

Here, the trial judge found that there were multiple reasons for Commerce to decline to pay the plaintiff under the theft coverage in the policy. Liability was not reasonably clear and, under such circumstances, § 3(9)(*g*) does not apply. *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 13-14 (1989). A plausible, reasoned legal position that may ultimately turn out to be mistaken — or simply, as here, unsuccessful — is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D. See *Gulezian* v. *Lincoln Ins. Co.*, 399 Mass. 606, 613 (1987); Billings, The Massachusetts Law of Unfair Insurance Claim Settlement Practices, 76 Mass. L. Rev. 55, 62-

63 (1991). An absence of good faith and the presence of extortionate tactics generally characterize the basis for a c. 93A - 176D action based on unfair settlement practice. See *Forucci* v. *United States Fid. & Guar. Co.*, 817 F. Supp. 195, 202 (D. Mass.), affirmed, 11 F.3d 1 (1st Cir. 1993).

So, for example, it was unfair to refuse a settlement offer simply on a statistical suspicion of a claimant because he was in the automobile business. *Wallace* v. *American Mfrs. Mut. Ins. Co.*, 22 Mass. App. Ct. 938, 939 (1986). See also *Whyte* v. *Connecticut Mut. Life Ins. Co.*, 818 F. 2d 1005, 1011 (1st Cir. 1987) (company practice not to settle any but small claims prior to trial); *Shapiro* v. *American Home Assur. Co.*, 616 F. Supp. 906, 918-919 (D. Mass. 1985) (failure to provide coverage after judicial determination that coverage applied).

In the face of Guity's failure to cooperate, the evidence that the theft of the BMW may have been contrived, and the inflation of the purchase price on Guity's claim, the company reasonably, and the judge found, promptly, notified him of the reasons for declining payment on the policy. There was no unfair settlement practice.

*Judgment affirmed.*