NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-150                                        Appeals Court

MARK SILVA  vs.  NORFOLK & DEDHAM MUTUAL FIRE INSURANCE COMPANY.


No. 16-P-150.

Barnstable.     January 5, 2017. - April 26, 2017.

Present:  Carhart, Massing, & Lemire, JJ.


Motor Vehicle, Insurance.  Insurance, Unfair act or practice,
     Settlement of claim.  Consumer Protection Act, Unfair act
     or practice, Insurance.  Judgment, Interest.  Practice,
     Civil, Consumer protection case, Interest.  Evidence,
     Expert opinion.  Witness, Expert.



Civil action commenced in the Superior Court Department on
January 13, 2011.

The case was heard by Robert C. Rufo, J.


Richard T. Corbett for the plaintiff.
Kevin M. Truland (Ralph C. Sullivan also present) for the
defendant.


MASSING, J.  After a jury-waived trial in the Superior

Court on claims of unfair settlement practices under G. L.

c. 93A and G. L. c. 176D, the judge found that the defendant,

Norfolk & Dedham Mutual Fire Insurance Company (Norfolk &

Dedham), did not engage in unfair practices in its handling of the plaintiff's, Mark Silva's, personal injury claim against Norfolk & Dedham's insured. The judge also found, however, that after Silva obtained a substantial jury verdict on his personal injury claim and while the appeal from that judgment was pending in this court,[1] Norfolk & Dedham violated c. 93A when it offered to settle the claim for the policy limit without also offering postjudgment interest.

Silva appeals, arguing that the judge erred by (1) finding that Norfolk & Dedham did not engage in unfair settlement practices, (2) precluding Silva's expert from testifying that Norfolk & Dedham engaged in unfair practices, and (3) finding that Norfolk & Dedham's failure to include postjudgment interest in its settlement offer, although a violation of c. 93A, was not wilful and knowing. Norfolk & Dedham cross appeals, arguing that its failure to offer postjudgment interest did not violate c. 93A whatsoever. We reverse the award of damages, prejudgment interest, costs, and attorney's fees with respect to its failure to offer postjudgment interest, and affirm the amended judgment in all other respects.

Background. We summarize the judge's comprehensive findings concerning Norfolk & Dedham's investigation and handling of Silva's personal injury claim, reserving other facts

_____

[1] See Silva v. McQuinn, 79 Mass. App. Ct. 1109 (2011).

for later discussion. On March 9, 2005, Silva, a tow truck operator, was assisting a vehicle stuck in a snow drift on Route 6 in Provincetown. Silva had pulled his truck to the side of the road and hooked up a tow line to the disabled car. The road conditions were "snowy, slushy, and icy." Dorothy McQuinn was driving on Route 6 with her windshield fogged up, obstructing her view of the road, when she rear-ended Silva, who "was tossed inside the truck." The next day, Norfolk & Dedham, McQuinn's insurer, was informed of the collision and opened a claim. McQuinn had bodily injury coverage of $250,000 per person, $500,000 per accident.

Norfolk & Dedham's initial efforts to obtain information regarding Silva and his injuries were mostly fruitless. Silva's automobile insurance carrier and his worker's compensation carrier were initially reluctant to disclose to Norfolk & Dedham any information from their own investigations. (Norfolk & Dedham did not obtain access to Silva's medical records until more than three years after the accident, after Silva filed his personal injury suit against McQuinn.) However, Norfolk & Dedham slowly gathered information casting doubt on the genuineness of Silva's claimed injuries. The judge found that "[t]his series of events occurring between 2006 and 2008 gave Norfolk & Dedham reason to doubt Silva's general veracity and be

suspicious of not only his wage claim but also his claims of bodily injury."

Based on the communications and miscommunications[2] between Silva's attorney (White) and the attorney that Norfolk & Dedham assigned to represent McQuinn (Feeney), prior to trial "Attorney Feeney did not have an understanding of what Attorney White's position was relative to settlement." On the first day of trial of the personal injury suit, January 19, 2010, the presiding judge held a lobby conference to discuss the possibility of settlement. White said that no offer had been made, and Feeney responded that he had never received a demand. Feeney made two settlement offers during the personal injury trial -- $25,000 and $60,000 -- both of which were rejected. The jury returned a verdict for Silva and awarded damages of $818,000.

Discussion. 1. Pretrial conduct. Silva argues that Norfolk & Dedham's pretrial handling of his personal injury claim violated subsections (d) and (f) of G. L. c. 176D, § 3(9). "General Laws c. 93A, § 2(a), states that '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful.'" Bobick

_____

[2] Silva's attorney sent Norfolk & Dedham a demand letter dated June 19, 2008. This letter was later included in Silva's discovery responses in the personal injury suit. Nevertheless, the judge found that "due to inadvertence and mistake by [McQuinn's attorney] and Norfolk & Dedham," neither saw the demand letter prior to the personal injury trial.

5

v. <u>United States Fid. & Guar. Ins. Co</u>., 439 Mass. 652, 658 (2003), quoting from G. L. c. 93A, § 2(<u>a</u>).  General Laws c. 176D, § 3(9), inserted by St. 1972, c. 543, § 1, bans "unfair or deceptive acts or practices in the business of insurance," including "[u]nfair claim settlement practices."  "[T]he former statute incorporates the latter, and [accordingly] an insurer that has violated G. L. c. 176D, § 3(9) . . . by definition, has violated the prohibition in G. L. c. 93A, § 2, against the commission of unfair or deceptive acts or practices."  <u>Hopkins</u> v. <u>Liberty Mut. Ins. Co</u>., 434 Mass. 556, 564 (2001).

As we are "reviewing a trial judge's conclusion that particular conduct was or was not unfair or deceptive, we review the judge's subsidiary findings of fact under the clearly erroneous standard, while reviewing de novo his ultimate conclusion of law."  <u>Zabin</u> v. <u>Picciotto</u>, 73 Mass. App. Ct. 141, 170 (2008).  See <u>Demoulas</u> v. <u>Demoulas Super Mkts., Inc</u>., 424 Mass. 501, 510 (1997), quoting from <u>T.L. Edwards, Inc</u>. v. <u>Fields</u>, 371 Mass. 895, 896 (1976) (judge's findings of fact not clearly erroneous "where such findings are supported 'on any reasonable view of the evidence, including all rational inferences of which it was susceptible'").

a.  <u>Norfolk & Dedham's investigation</u>.  "The question under [G. L. c. 176D, § 3(9)](<u>d</u>)[,] is whether [Norfolk & Dedham] refused to pay the claim without conducting a reasonable

investigation based on all available information." Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 676 (1983). We agree with the judge that Norfolk & Dedham conducted a reasonable investigation.

The judge's twenty-seven pages of findings under the heading "Pre-Trial Claims Handling" reflect the voluminous record in this case documenting Norfolk & Dedham's inquiry into the circumstances of the accident and Silva's injuries. The record includes sixty-six pages of log entries made by Norfolk & Dedham claims adjusters over the history of Silva's claim. Six days after learning of the accident, Norfolk & Dedham assigned an independent adjuster to investigate the claim. Thereafter, through its own claims adjusters and other sources, including private investigators, Silva's worker's compensation carrier, Silva's automobile insurance carrier, and Silva's discovery responses and deposition testimony, Norfolk & Dedham gradually acquired information that gave it "a reasonable basis for regarding as suspicious" Silva's claim. Trempe v. Aetna Cas. & Sur. Co., 20 Mass. App. Ct. 448, 455 (1985). Norfolk & Dedham also sought the opinions of Dr. David Gushue, a biomechanical engineer, and Dr. Mark Weiner, a neurologist, concerning the cause and extent of Silva's injuries.

The judge found that "there was no testimony at trial identifying specific steps that Norfolk & Dedham should have

taken but did not in investigating Silva's bodily injury claim." The judge did not err in determining that Norfolk & Dedham was not "inattentive" or "unreasonable" in its investigation of the accident. McLaughlin v. American States Ins. Co., 90 Mass. App. Ct. 22, 32 (2016).

b. Norfolk & Dedham's failure to offer a settlement. Chapter 176D requires an insurer "to effectuate [a] prompt, fair and equitable settlement[] of claims in which liability has become reasonably clear." Bobick, 439 Mass. at 658-659, quoting from G. L. c. 176D, § 3(9)(f). "Liability, as the word is used in this context, 'encompasses both fault and damages.'" O'Leary-Alison v. Metropolitan Property & Cas. Ins. Co., 52 Mass. App. Ct. 214, 217 (2001), quoting from Clegg v. Butler, 424 Mass. 413, 420 (1997). "To determine when an insured's liability became 'reasonably clear' an objective test is used. The fact finder determines 'whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insure[d] was liable to the plaintiff.'" O'Leary-Alison, supra, quoting from Demeo v. State Farm Mut. Auto Ins. Co., 38 Mass. App. Ct. 955, 956-957 (1995).

Here, Norfolk & Dedham "had multiple reasons to be skeptical of [Silva's] damage claims" from the inception of its investigation just days after the accident. O'Leary-Alison, supra at 217-218. A week after the accident, McQuinn told a

Norfolk & Dedham claims adjuster "that she could not imagine how [Silva] could possibly have been injured." Eight days later Norfolk & Dedham received information that after the accident, Silva had not only towed McQuinn's car from the scene, but also "returned to complete the original tow he had been working on when the accident occurred." Within one month of the accident, a private investigator informed Norfolk & Dedham that Silva "was observed at [his automobile service station] and it appeared he was working a very full and busy schedule."

Norfolk and Dedham's skepticism continued when "Silva waited a year after the accident to claim disability from performing work as a tow truck driver, continued to work a full towing schedule while claiming he could only perform desk work, [and] sought workers' compensation benefits while collecting unemployment benefits." Norfolk & Dedham also learned that Silva's worker's compensation insurer questioned the existence of causation between the accident and Silva's claimed injuries. In addition, "[a]lthough Attorney White initially claimed three fractured vertebrae, Silva's injury was revealed to be three herniated disks, two of which resolved themselves."

Gushue and Weiner reviewed evidence of the accident and Silva's medical records. According to Gushue, the impact of the accident would have generated "the same level of force [Silva] experiences on a daily basis while going about his usual

routine." Norfolk & Dedham noted in its file that Gushue's report "looked 'positively solid' for the defense." Weiner opined that Silva's treatment after June, 2006, was "not causally related to the injuries sustained as a result of the motor vehicle accident."

Although fault for the accident may have been clear, the "damages attributable to [McQuinn] . . . was still the subject of good faith disagreement." Bobick, 439 Mass. at 660. "So long as the insurer acts in good faith, the insurer is not held to standards of omniscience or perfection." Bolden v. O'Connor Café of Worcester, Inc., 50 Mass. App. Ct. 56, 67 (2000), quoting from Peckham v. Continental Cas. Ins. Co., 895 F.2d 830, 835 (1st Cir. 1990). Here, Norfolk & Dedham "had a reasonable basis for resisting liability." Trempe, 20 Mass. App. Ct. at 452.

Accordingly, we conclude that "there existed a legitimate difference of opinion as to the extent of [McQuinn's] liability," Bobick, 439 Mass. at 660, which was "outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D." Guity v. Commerce Ins. Co., 36 Mass. App. Ct. 339, 343 (1994).

Disputing this conclusion, Silva argues that some of the evidence on which the judge relied was not known to Norfolk & Dedham until after the judgment in the underlying personal

injury trial and, therefore, could not have been part of Norfolk & Dedham's basis for doubting Silva's claim. Specifically, Silva complains that the judge should not have considered certain "bank and tax records" showing wages and benefits Silva received in 2005, as well as "investigative reports and summaries of surveillance" indicating that Silva continued to work "full-tilt" after the accident. The judge did not err in considering this after-acquired evidence, which merely confirmed that Norfolk & Dedham had a reasonable basis to resist settlement and was cumulative of the facts Norfolk & Dedham had developed during its investigation.

To be sure, settlement offers must be made in good faith given the insurer's "knowledge at the time of the relevant facts and law concerning [Silva's] claim." Bolden, 50 Mass. App. Ct. at 66. However, "[e]ven if [Norfolk & Dedham] violated G. L. c. 176D, § 3(9)(d) and (f), [Silva] had to be adversely affected by that violation in order to be entitled to recover under G. L. c. 93A, § 9." Van Dyke, 388 Mass. at 678. See Casavant v. Norwegian Cruise Line, Ltd., 460 Mass. 500, 503 (2011) (to recover c. 93A damages, plaintiff must show "causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception" [quotation omitted]). Nothing in Bolden, supra, or Parker v. D'Avolio, 40 Mass. App.

Ct. 394, 395 (1996), with respect to c. 93A liability undermines this holding of Van Dyke with respect to causation.

Just as Norfolk & Dedham relied on new evidence to show its past conduct was reasonable, it was open to Silva to show that further investigation by Norfolk & Dedham would have unearthed evidence that made its refusal to settle unreasonable.[3]  If Norfolk & Dedham had insufficient grounds for not settling with Silva prior to trial, "it ran the risk that subsequent events would not support its assertion that its insured[] had a reasonable defense."  Van Dyke, supra.  Here, however, Norfolk & Dedham's subsequent discoveries supported the reasonableness of its pretrial investigation and settlement stance, and the judge did not err in considering this evidence.

2.  Silva's expert.  Silva, who settled his claims against McQuinn in exchange for the assignment of her rights against Norfolk & Dedham, sought to introduce expert testimony to prove that Norfolk & Dedham violated G. L. c. 176D, and therefore

---

[3] In this vein, the judge considered the reasonableness of Norfolk & Dedham's settlement offers in light of the substantial jury verdict for Silva.  The judge concluded that "Norfolk & Dedham could not have anticipated the $818,000 jury verdict and that verdict is not an appropriate sum against which to gauge the reasonableness of the mid-trial settlement offers."  We agree.  See Guity, 36 Mass. App. Ct. at 343 ("A plausible, reasoned legal position that may ultimately turn out to be mistaken -- or simply, as here, unsuccessful -- is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D."); O'Leary-Alison, 52 Mass. App. Ct. at 218 ("An insurer's good faith, but mistaken, valuation of damages does not constitute a violation of c. 176D").

c. 93A, by exposing McQuinn to a judgment exceeding her policy limits.  See, e.g., Gore v. Arbella Mut. Ins. Co., 77 Mass. App. Ct. 518, 526 (2010) ("If the insurer violated the law in failing to settle for the policy limits, then the insurer will be liable to the insured for the damages exceeding the policy limit").  Silva's expert, Attorney Paul Kelleher, offered an opinion that Norfolk & Dedham's adjusters and investigators "engaged in unfair and deceptive claims practices," based on a list of activities that he deemed to be "unfair claims settlement practices."  The judge, however, did not allow Kelleher to testify because he "did not present admissible expert testimony that no reasonable insurer would have failed to settle his case against McQuinn within the policy limits."  In the absence of such proof, the judge found that Norfolk & Dedham's failure to offer the policy limit prior to trial did not amount to an unfair settlement practice.  Silva contends that the judge erroneously excluded Kelleher's proposed testimony.

Kelleher's proffered testimony that Norfolk & Dedham's conduct was unfair or deceptive was merely an opinion of law, which is not a proper subject for expert testimony.  See Birch v. Strout, 303 Mass. 28, 32 (1939).  "A ruling that conduct violates G. L. c. 93A is a legal . . . determination."  R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 435 Mass. 66, 73 (2001).  While "[a]n opinion within the domain of the expert's

professional knowledge may be admissible even if the expert's testimony touches on the ultimate issues before the jury," Commonwealth v. Woods, 419 Mass. 366, 374-375 (1995), Kelleher's proposed testimony "in effect would have been an opinion involving at once a conclusion of law and a view on the ultimate issue of the defendant's [liability]." Commonwealth v. Brady, 370 Mass. 630, 635 (1976) (prohibiting insurance agent from interpreting "legal sufficiency of the defendant's [insurance] coverage"). Such testimony was properly excluded. See Mass. G. Evid. § 704 Note, at 241 (2016) (where "questions call for opinions on matters of law or mixed questions of law and fact . . . the [trier of fact] must be allowed to draw [its] own conclusions from the evidence").

"The general rule in this Commonwealth is that an insurer is held to a standard of reasonable conduct in its defense of its insured." Hartford Cas. Ins. Co. v. New Hampshire Ins. Co., 417 Mass. 115, 118 (1994) (Hartford Casualty). An insurer can be liable for negligent handling of the defense of a covered claim or for negligent handling of its settlement. Id. at 120. The test for the latter "is not whether a reasonable insurer might have settled the case within the policy limits, but rather whether no reasonable insurer would have failed to settle the case within the policy limits." Id. at 121. Because such proof "is not a matter within the common knowledge of the ordinary lay

person," <u>Herbert A. Sullivan, Inc</u>. v. <u>Utica Mut. Ins. Co</u>., 439
Mass. 387, 402-403 (2003), expert testimony as to sound
insurance practices is necessary.[4]  See <u>id</u>. at 403.  Silva's
proposed expert offered no such testimony.

Silva argues that <u>Hartford Casualty</u> applies only to common
law negligence claims, and that because his claim arises under
c. 93A, the proper standard is whether the insurer's conduct was
unfair or deceptive, as his expert would have testified.
Although whether Norfolk & Dedham's conduct was unfair or
deceptive is indeed the ultimate issue, we agree with the judge
that to prevail on this claim, Silva was required, at a minimum,
to satisfy the <u>Hartford Casualty</u> standard.

"[A] violation of G. L. c. 93A requires, at the very least,
more than a finding of mere negligence."  <u>Darviris</u> v. <u>Petros</u>,
442 Mass. 274, 278 (2004).  In determining the liability of an
insurer for failing to settle a claim, the court in <u>Hartford
Casualty</u> rejected the "traditional[] standard of whether the
insurer exercised good faith judgment on the subject."  417
Mass. at 118.  Instead, the court adopted the less stringent
negligence standard -- the same standard that had previously
been applied to the duty to defend.  <u>Id</u>. at 120-121.  Silva was

---

[4] This is not a case where, because of the "gross or
obvious" nature of the acts, expert testimony is unnecessary to
prove that a party was negligent.  See <u>Herbert A. Sullivan</u>,
<u>supra</u> at 403.

required to satisfy at least this standard.  See id. at 120

(noting that c. 93A "imposes standards of reasonable care").  If

Silva could not establish that Norfolk & Dedham acted

negligently in failing to offer the policy limit, he would not

be able to show that such conduct was unfair or deceptive.  See

Swanson v. Bankers Life Co., 389 Mass. 345, 349 (1983) ("not

every negligent act is unfair or deceptive and thus unlawful

under G. L. c. 93A, § 2"); SMS Fin. V, LLC v. Conti, 68 Mass.

App. Ct. 738, 748 (2007) ("negligence without more does not

constitute an unfair or deceptive practice under G. L. c. 93A").

3.  Posttrial conduct.  On May 24, 2010, while the appeal

from the personal injury verdict was pending, Silva informed

Norfolk & Dedham that he was "willing to settle his claim for

the entire amount of the judgment plus interest, $1,011,873.37."

Norfolk & Dedham responded in a letter dated June 2, 2010,

offering to settle the case for $250,000, the policy limit, "in

exchange for a release of its insured."  The judge determined

that "the failure to include post-judgment interest in the June

2, 2010 settlement offer violated Chapters 176D and 93A," but

also that the "violation of Chapter 93A was not knowing and

willful so as to warrant punitive damages."[5]  Norfolk & Dedham

_____

[5] The judge calculated Silva's damages as the loss of use of
the payment Norfolk & Dedham should have offered on June 2, 2010
(the $250,000 policy limit plus the postjudgment interest due
through that date), from June 2, 2010, through January 11, 2011,

argues that the judge erred as a matter of law in finding a violation.[6] Silva, for his part, argues that the judge erred by finding that the violation was not knowing or wilful and declining to order double or treble damages. We agree with Norfolk & Dedham.

The judge relied on Davis v. Allstate Ins. Co., 434 Mass. 174, 181-183 (2001), for the proposition that postjudgment interest must be included in a postjudgment settlement offer, even if the judgment is greater than the policy limits. Our reading of Davis, however, yields a different holding: after judgment enters for the claimant, if the insurer does not unconditionally offer its policy limit to satisfy the judgment, the insurer is responsible for postjudgment interest on the entire amount of the judgment until an unconditional offer is made. Davis, therefore, concerns when an insurer's obligation

---

when Norfolk & Dedham paid Silva $371,060.39 to settle Silva's claims against McQuinn. The damages thus amounted to $10,465.47, plus prejudgment interest, costs, and attorney's fees, for a total amended judgment of $21,372.66.

[6] Norfolk & Dedham also argues that the c. 93A claim was barred because Silva failed to make a specific demand for postjudgment interest in his demand letter. See G. L. c. 93A, § 9(3). While Norfolk & Dedham asserted § 9(3) as an affirmative defense in its answer, it did not raise this issue in its opposition to Silva's motion for summary judgment "or otherwise flag it prior to (or even after) trial." Diamond v. Pappathanasi, 78 Mass. App. Ct. 77, 89 (2010). "Having proceeded through a full trial to determine the truth of the allegations set forth in the plaintiff's complaint, we believe that it is too late for the defendant[] to argue the point." Ibid.

to pay postjudgment interest is tolled, not whether it must be included in any postjudgment offer to settle.

Here, Norfolk & Dedham made a conditional offer:  the policy limit of $250,000 in exchange for the release of its insured.  Such an offer was not improper.  See, e.g., Lazaris v. Metropolitan Property & Cas. Ins. Co., 428 Mass. 502, 505-506 (1998); Caira v. Zurich Am. Ins. Co., 91 Mass. App. Ct. 374,     (2017).  However, it did expose Norfolk & Dedham to the risk that if Silva declined the offer (which he did), Norfolk & Dedham's obligation to pay postjudgment interest on the entire judgment would continue.  See Davis, supra at 180-181.  When Silva and Norfolk & Dedham finally agreed to the terms of a settlement of Silva's claims against McQuinn, Norfolk & Dedham paid the postjudgment interest due to Silva.  See note 5, supra. Its actions were not unfair or deceptive.

Conclusion.  We reverse the portions of the amended judgment entered on November 23, 2015, awarding Silva damages, prejudgment interest, costs, and attorney's fees for Norfolk & Dedham's failure to include postjudgment interest in its settlement offer.  In all other respects, the amended judgment is affirmed.

So ordered.